COMMONWEALTH of Pennsylvania, Appellee

v.

Albert D. MAXON, Appellant.

Superior Court of Pennsylvania.

Argued March 20, 2002.

Filed May 7, 2002.

Joseph P. Burt, Public Defender, Erie, for appellant.

Kathleen A. Scibetta, Asst. Dist. Atty., Erie, for Com., appellee.

Before: JOHNSON, BENDER, and MONTEMURO *, JJ.

JOHNSON, J.

¶ 1 Albert D. Maxon appeals from the judgment of sentence entered following his conviction of Possession of a Controlled Substance, Possession of a Controlled Substance with Intent to Deliver, Possession of Drug Paraphernalia, Aggravated Assault, and Resisting Arrest. *See* 35 P.S. §§ 780–113(a)(16), (30), (32); 18 Pa.C.S. §§ 2702(a)(3); 5104 (respectively). Maxon contends the trial court erred in failing to suppress drug evidence recovered during a search of his person and a subsequent search of his home. Maxon also claims that the evidence was insufficient to support his conviction for resisting arrest. After study, we conclude that the trial court did err in not suppressing illegally obtained evidence and as a result, there was insufficient evidence to support Maxon's conviction for resisting arrest. Accordingly, we reverse the judgment of sentence and remand for proceedings consistent with this Opinion.

¶ 2 On February 11, 2000, Detectives Michael Nolan and Matt Fischer, of the City of Erie Police Department, conducted surveillance of Maxon's home based on information that Maxon was engaged in the drug trade. The record also reflects that an additional officer (known only as Sergeant Kress) provided back-up for the detectives in their surveillance. At approximately 2:00 p.m., Maxon pulled up in front of his home with an unidentified man in the passenger seat. Maxon entered the house and returned to the car several minutes later carrying a baggie in his hand. The detectives followed Maxon to his next destination whereupon he got out of the car, walked around the corner and out of the detectives' sight. Several minutes elapsed before Maxon returned to his vehicle and left. Still conducting surveillance, the detectives followed Maxon for ten minutes before he stopped again. The detectives again observed Maxon walk into a third house.

¶ 3 When Maxon emerged from the house, he went to and began speaking with his passenger, who had remained seated throughout the detectives' surveillance. Both Detectives Nolan and Fischer approached Maxon and walked with him to the back of his car while Sergeant Kress spoke with Maxon's passenger. Both detectives were in plain clothes but had their badges prominently displayed. Detective Nolan then informed Maxon that he had information that Maxon was selling drugs and asked if he had any on him. Maxon denied the charge and consented to a search. Detective Nolan grabbed Maxon's overcoat and felt what he believed to be a bag of cocaine. He stated his suspicion to Maxon. As Detective Nolan attempted to reach into Maxon's pocket, Maxon protested by attempting to push Detective Nolan's hand away. Detective Nolan refused to release Maxon, clutching the liner of Maxon's coat. A struggle ensued wherein Detective Fischer joined in an attempt to subdue Maxon. As the three men were rolling on the ground, Maxon managed to bite both men. Finally, Detective Nolan

---

* Retired Justice assigned to the Superior Court.

threatened to poke out Maxon's eye if he did not relent. Maxon then submitted. Detective Nolan then retrieved from Maxon a baggie of cocaine.

¶ 4 Leaving Maxon in police custody at the police station, the detectives proceeded directly to Maxon's home. When they arrived, Maria Vera, Maxon's girlfriend, answered the door. The detectives explained the circumstances of Maxon's arrest and asked if they could search the apartment for drug evidence. Vera, then 17 years old, gave her consent. A search of the apartment revealed more drugs, drug paraphernalia and $9,270 in cash.

¶ 5 Prior to trial, Maxon filed an omnibus motion seeking to suppress drug evidence secured from his person and home. The parties agreed to submit Officer Nolan's testimony, given during Maxon's preliminary hearing, for the trial court's review in determining the suppression issue. The court eventually denied Maxon's request and the case proceeded to a bench trial. The court found Maxon guilty of all the charges and sentenced him to an aggregate of seven to sixteen years' incarceration and $30,500 in fines. Maxon then filed this appeal.

¶ 6 Maxon presents the following questions for this Court's disposition:

1. Was the search of Mr. Maxon's person violative of his rights, state and Federal, to be free from unreasonable searched [sic] and seizures because it followed a police intervention equivalent to an arrest, the limited consent was timely terminated, and subsequent police action was not based on an exception to the requirement that a search be based on a warrant issued by a neutral magistrate after a determination that probable cause has been demonstrated?

2. Was the search of Mr. Maxon's home violative of his rights, state and Federal, to be free from unreasonable searches and seizures because it followed no valid consent and was not based on an exception to the requirement that a search be based on a warrant issued by a neutral magistrate after a determination that probable cause has been demonstrated?

3. Was the court's verdict as to resisting arrest not supported by sufficient evidence?

Brief for Appellant at 4.

¶ 7 When reviewing the suppression court's denial of a motion to suppress, we must first ascertain whether the record supports the suppression court's factual findings. *See Commonwealth v. Dangle*, 700 A.2d 538, 539 (Pa.Super.1997). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *See Commonwealth v. Lynch*, 773 A.2d 1240, 1243 (Pa.Super.2001). We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error. *See Commonwealth v. Perry*, 710 A.2d 1183, 1184 (Pa.Super.1998).

¶ 8 In support of his first question, Maxon contends that his encounter with the detectives amounted to a formal arrest and not a mere encounter. Brief for Appellant at 18. Maxon argues that as such, the detectives were required to demonstrate by articulable facts that he was engaged in criminal activity justifying detention. Brief for Appellant at 22. The Commonwealth argues that because the detectives "had no intent to arrest nor any intent to

restrain [Maxon] if he chose to ignore the police and attempt to leave," Maxon was subject to a non-custodial encounter. Brief for Appellee at 2.

¶ 9 The Pennsylvania Supreme Court has been vigilant in the protection of the right to privacy guaranteed by Article I, Section 8 of our state Constitution. It bears repeating that Court's admonition:

> The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.

*Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372, 376 (2000). To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *See Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa.Super.2000). Our Supreme Court has defined three forms of police-citizen interaction: a mere encounter, an investigative detention, and a custodial detention. *See Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336, 340 (1998). A mere encounter between police and a citizen need not be supported by any level of suspicion, and carries no official compulsion on the part of the citizen to stop or to respond. *See Beasley*, 761 A.2d at 624. No constitutional provision prohibits police officers from approaching citizens in public to make inquiries of them. If, however, the police action becomes too intrusive, a mere encounter may be regarded as an investigatory detention or seizure. *See id.* To determine whether a mere encounter rises to the level of an investigatory detention,

we must discern whether, as a matter of law, police have conducted a seizure of the person involved. *See Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1119 (1998).

¶ 10 To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. Stated differently, we ask whether a reasonable person, innocent of any crime, would have thought he was being restrained if he had been in the defendant's shoes. *See Beasley*, 761 A.2d at 625.

¶ 11 In applying this test, it is necessary to examine the nature of the encounter. Circumstances to consider include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. *See Beasley*, 761 A.2d at 624.

¶ 12 Here, the trial court made several factual findings all of which are supported by the record. Accordingly, we are bound by those facts as we determine whether the court erred as a matter of law. *See Perry*, 710 A.2d at 1184. We shall rely on the following findings for the remainder of our analysis:

\* \* \* \* \*

6. Nolan testified that he was conducting surveillance on [Maxon's] 1714 Liberty Street (hereinafter "residence") in Erie, Pennsylvania on February 11, 2000.

7. At approximately 2:00 PM on that date, [Maxon] arrived at the residence, exited the vehicle he was driving, went inside for a few minutes and then came out holding a plastic baggie. There was another Black male in the vehicle who did not exit the vehicle at any point. Nolan could not see what was in the baggie.

8. [Maxon] then reentered his vehicle and proceeded northbound on Liberty Street. Nolan and other officers followed [Maxon] to conduct "mobile surveillance" on [Maxon].

9. [Maxon] drove to 8th and Sassafras where he stopped the vehicle and got out. He then went around the corner and Nolan lost sight of [Maxon]. Nolan then saw [Maxon] exit a building in the 700 block of Sassafras Street.

10. [Maxon] then left that location and proceeded to 9th and Chestnut. Nolan and other officers continued to follow.

11. [Maxon] then entered a house at 9th and Chestnut.

12. While [Maxon] was in the house, Nolan and the other officers, Detective Fischer and Sergeant Kress, decided to approach [Maxon] and "make him aware of our suspicions." Nolan testified, however, that had [Maxon] turned and walked away, he would not have continued the encounter.

13. Nolan and the other officers approached [Maxon] as he was walking back to his vehicle. None of the officers were in uniform. Nolan did have a badge on a chain around his neck. Sergeant Kress talked to the passenger and Nolan and Detective Fischer talked to [Maxon].

14. Nolan informed [Maxon] that they had knowledge that he was involved in selling drugs. [Maxon] denied that he was. At that point, Nolan asked [Maxon] if he had any drugs on him and [Maxon] stated that he did not and that Nolan could go ahead and check.

\* \* \* \* \*

18. [Maxon] was finally subdued and handcuffed. Nolan retrieved the bag from [Maxon's] pocket and determined that it was crack cocaine.

19. Nolan then turned [Maxon] over to other officers and proceeded back to the residence. Detective Fischer and Sergeant Kress also went back to the residence.

\* \* \* \* \*

21. Nolan informed Vera [Maxon's girlfriend and resident] of what had just transpired with [Maxon]. He then asked for permission to search which was granted by Vera. The officers found more drugs and paraphernalia on the premises.

Findings of Fact and Conclusions of Law, 12/12/00, at ¶¶ 6–14, 18–19, 21.

¶ 13 Based on the fact that Maxon and his passenger were approached by three police officers, one of whom voiced his suspicion that Maxon was dealing drugs and went so far as to ask Maxon if he had any drugs on him, we conclude that the totality of the circumstances was sufficiently coercive such that a reasonable person innocent of any crime would not have felt free to terminate the encounter. *See Beasley*, 761 A.2d at 625. Therefore, we conclude that at the moment Detective Nolan asked Maxon if he had any drugs, Maxon was subject to an investigatory detention. *See Commonwealth v. Martin*,

705 A.2d 887, 891 (Pa.Super.1997) (concluding that mere encounter with plain-clothes officer escalated to an investigatory detention when officers in uniform approached defendant and told him they had received a tip that he was selling drugs); *Commonwealth v. Lewis,* 535 Pa. 501, 636 A.2d 619, 623 (1994) (concluding that seizure occurred where plain-clothes officers met defendant at bus station, told him they were working narcotics and doing an interdiction program checking for couriers bringing drugs back from New York, and questioned him about his trip).

¶ 14 Our courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. *See Commonwealth v. Allen,* 452 Pa.Super. 200, 681 A.2d 778, 783 (1996), *reversed on other grounds,* 555 Pa. 522, 725 A.2d 737 (1999). The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a **particularized and objective basis** for suspecting the individual stopped of criminal activity. *See Commonwealth v. Ayala,* 791 A.2d 1202, 1209 (Pa.Super.2002) (quoting *In re D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001)). Thus, to establish grounds for reasonable suspicion, the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity was afoot. *See Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 677 (1999). Although a police officer's own observations, knowledge and experience weigh heavily in determining whether reasonable suspicion existed, our courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in "the often competitive enterprise of ferreting out crime." *In re D.E.M.,* 727 A.2d 570, 578 n. 19 (Pa.Super.1999) (quoting *Terry v. Ohio,* 392 U.S. 1, 11–12, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968)). Therefore, the test we apply remains an objective one and will not be satisfied by an officer's hunch or unparticularized suspicion. *See Commonwealth v. Arch,* 439 Pa.Super. 606, 654 A.2d 1141, 1144 (1995). An officer's belief that criminal activity is afoot, albeit plausible under the circumstances, must be linked with his observation of suspicious or irregular behavior of the particular defendant stopped before he may conduct the stop. *See id.* at 1144. Consequently, we have held, on multiple occasions, that even where the circumstances surrounding an individual's conduct suggest ongoing illegality, the individual may not be detained unless his or her personal conduct substantiates involvement in that activity. *See Commonwealth v. Tither,* 448 Pa.Super. 436, 671 A.2d 1156, 1158 (1996) (concluding that defendant's conduct failed to establish reasonable suspicion where police witnessed defendant in parked car, saw second person reach inside car, and saw both parties depart when third person yelled a warning exposing police presence; police saw no exchange of money or drugs and had no prior information of criminal activity); *Commonwealth v. Wilson,* 655 A.2d at 557, 560 (Pa.Super.1995) (concluding that defendant's conduct failed to establish reasonable suspicion where defendant twice exited his vehicle in neighborhood of high drug activity and disappeared from sight prior to returning to his vehicle; although police did observe drug activity involving others in the neighborhood, they did not see defendant engage in exchange of objects or money); *Commonwealth v. Martinez,* 403 Pa.Super. 125, 588 A.2d 513, 516

(1991) (concluding that defendant's conduct failed to establish reasonable suspicion where, upon approach of police, defendant departed company of several others with whom she appeared to be talking and hurried away displaying a bulge in the front of her jacket; police did not observe interaction amongst group other than apparent conversation).

¶ 15 Here, the court found that Detective Nolan observed Maxon drive to, enter and exit several buildings. Detective Nolan also saw Maxon bring a baggie out of his residence but could not see its contents. Although it was plausible that Maxon was engaged in illegal conduct, there was nothing irregular or suspicious about his or his passenger's behavior. *See Arch*, 654 A.2d at 1144. Therefore, we conclude that the detectives did not possess a reasonable suspicion justifying Maxon's detention; accordingly, they engaged in an illegal detention, the fruits of which should have been suppressed. *See Tither*, 671 A.2d at 1159.

¶ 16 We now turn to Maxon's second question regarding the legality of the consensual search of his home. Our Supreme Court has expressly stated that:

[w]here [ ] a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness.

*Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). The Commonwealth fails to allege nor do we discern any break in the causal chain between the illegal search and seizure and the detectives arrival at Maxon's home. In fact, the trial court's findings clearly indicate that the request to search Maxon's home was predicated on the illegal seizure of drugs found on Maxon. Therefore, we conclude that notwithstanding Vera's consent, the discovery of drugs at Maxon's residence was the fruit of the illegal seizure of Maxon outside his car. *See Strickler*, 757 A.2d at 903 (concluding that voluntary consent will not justify an illegal search). Accordingly, we conclude that the trial court erred in refusing to suppress drug evidence found at Maxon's home.

¶ 17 Maxon's last issue challenges the sufficiency of the evidence supporting his conviction of resisting arrest. Brief for Appellant at 28. Maxon contends that he "was merely trying to escape" from police misconduct. Brief for Appellant at 28, 30. Therefore, Maxon argues, that such behavior does not amount to resisting arrest. Brief for Appellant at 29.

¶ 18 A claim challenging the sufficiency of the evidence is a question of law. *See Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). When reviewing a sufficiency claim we view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *See id.* Normally, evidence is deemed sufficient to support the underlying convictions if:

There is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left for the [fact-finder] and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.

*Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167, 1170 (1993). Accordingly, "[t]he facts and circumstances established by the Commonwealth 'need not be abso-

lutely incompatible with the defendant's innocence.' " *Commonwealth v. Hodge,* 441 Pa.Super. 653, 658 A.2d 386, 387–88 (1995) (quoting *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468, 478 (1977)). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *See Widmer,* 744 A.2d at 751. This Court will reverse the resulting verdict based on legal insufficiency only where the testimony "is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *Karkaria,* 625 A.2d at 1170.

¶ 19 Here, the Commonwealth bore the burden of proof to show beyond a reasonable doubt that Maxon violated 18 Pa.C.S. Section 5104 (Resisting Arrest and Other Law Enforcement). Specifically, Section 5104 provides as follows:

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

¶ 20 In the case at bar, the only element under consideration is the lawfulness of the arrest. The language of the statute is quite clear and unambiguous; in order to be convicted of resisting arrest, the underlying arrest must be lawful. *See Commonwealth v. Biagini,* 540 Pa. 22, 655 A.2d 492, 497 (1995). A determination that the underlying arrest was lawful necessitates a legal conclusion that the ar-

resting officer acted with authority and probable cause. *See id.*

¶ 21 As we have already concluded that the detectives did not possess even a reasonable suspicion that Maxon was engaged in criminal activity, we must necessarily conclude that they acted without probable cause. *See Lynch,* 773 A.2d at 1244 (concluding that reasonable suspicion requires a lesser factual showing than probable cause for law enforcement officers to stop an individual). Without probable cause to arrest Maxon, we are compelled to conclude that the evidence was insufficient to convict him of resisting arrest. *See Biagini,* 655 A.2d at 497.

¶ 22 With that said, we do not wish to place our imprimatur on Maxon's conduct. Simply because the police did not have probable cause did not grant Maxon the right to bite the officers as suggested by the record. *See Biagini,* 655 A.2d at 497–98 (stating that "[t]he determination that a police officer placed an individual under arrest without probable cause is a legal determination; it is an issue to be resolved in a courtroom, not on a street corner. Within a civilized society[,] rules exist to resolve disputes in an orderly and peaceful manner. Physical resistance to a police officer is not only counter-productive to the orderly resolution of controversy, but it is also specifically prohibited by statute. 18 Pa.C.S. § 505(b)(1)(i).").

¶ 23 For the foregoing reasons, we reverse the judgment of sentence and remand for proceedings consistent with this Opinion.

¶ 24 Judgment of sentence **RE-VERSED.** Case **REMANDED** for proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**