J-A33003-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD CARL ENYEART, | : | |
| | : | |
| Appellant | : | No. 90 WDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000212-2015

BEFORE:    LAZARUS, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JULY 19, 2017**

Ronald Carl Enyeart (Appellant) appeals from the judgment of sentence entered following his conviction for driving under the influence of a controlled substance (DUI). We affirm.

At approximately 9:20 p.m. on January 17, 2015, Pennsylvania State Trooper Michael Gregory Meko was following Appellant's vehicle while traveling on State Route 830 in Clearfield County. After observing Appellant's vehicle "swerving on the roadway," "straddling" the yellow center turning lane, and crossing the fog line, Trooper Meko activated his mobile video recorder (MVR). N.T., 8/25/2015, at 4-5.  The video shows about 30 seconds of footage of Appellant driving prior to signaling and making a left-hand turn into a Sheetz convenience store. The video shows a "few instances" of Appellant's vehicle "nudging the center line," and one instance

_____

*Retired Senior Judge assigned to the Superior Court.

where Appellant's right tires cross the fog line on the right after negotiating a curve in the road. *Id.* at 8.

Appellant made a left-hand turn into the Sheetz parking lot and pulled into a parking space. N.T., 11/5/2005, at 40. Trooper Meko followed him, pulled up behind him, and activated the emergency lights in his unmarked vehicle. *Id.* Trooper Meko approached Appellant and, according to his preliminary hearing testimony, he noticed the odor "of an adult alcoholic beverage, and marijuana[.]" N.T., 3/20/2015, at 6. Trooper Meko ordered Appellant out of the vehicle to perform field sobriety tests, which Appellant failed. Appellant was placed under arrest and transported to Penn Highlands Hospital. There, Trooper Meko gave Appellant *O'Connell*[1] warnings and read

---

[1] We have explained:

> The *O'Connell* warnings were first announced in *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989). In a later opinion, our Supreme Court explained both the *O'Connell* warnings and the reasoning behind the warnings:
>
> > In order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving

Appellant the DL-26 form (chemical testing warnings), which includes

Pennsylvania's implied consent laws[2] and a statement that the operator

_____

> privileges[. T]he duty of the officer to provide the **O'Connell** warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his **Miranda** rights.
>
> **Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott**, 684 A.2d 539, 545 (Pa. 1996).

**Commonwealth v. Barr**, 79 A.3d 668, 670 n.4 (Pa. Super. 2013).

[2] 75 Pa.C.S. § 1547(b)(2) sets forth the implied consent warnings. The subsection states:

> It shall be the duty of the police officer to inform the person that:
>
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1) [(concerning DUI, general impairment) ], the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(b)(2). In particular, the warning on the DL-26 form states:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle

could face increased criminal penalties for refusing a blood draw. ***See*** N.T., 11/5/2015, at 51. Appellant consented to a blood draw, which showed the presence of marijuana, a Schedule I controlled substance, and a blood alcohol content (BAC) of .082. N.T., 11/5/2015, at 92. As a result, Appellant was charged with DUI, as well as one count of DUI - general impairment.

Appellant filed a motion to suppress, which was denied following a hearing, and the matter proceeded to a jury trial. At trial, the Commonwealth presented forensic toxicologist Ayako Chan-Hosokawa, who testified, *inter alia*, that the margin of error in the BAC testing was between six and seven percent. N.T., 11/5/2015, at 101. At the close of the Commonwealth's case, the court granted Appellant's motion for judgment of acquittal on the charge of DUI - general impairment.

In his trial testimony, Appellant admitted he had smoked marijuana earlier that day. Thus, the jury convicted Appellant of the remaining count of DUI. The trial court found Appellant not guilty of the summary offenses of careless driving and roadways laned for traffic.

---

Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which includes a minimum of 72 consecutive hours in jail and a minimum fine of $1000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

Pennsylvania Department of Transportation, Form DL-26 (3-12).

On December 18, 2015, the trial court sentenced Appellant to a term of imprisonment of 90 days to one year and imposed a $1,500.00 fine. No post-sentence motions were filed. On January 13, 2016, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises two issues for our review:

1. Did the trial court err when it denied Appellant's motion to suppress where evidence of record does not demonstrate either reasonable suspicion or probable cause to stop the motor vehicle that Appellant was operating?

2. Does the holding in *Birchfield* [*v. North Dakota*, 136 S. Ct. 2160 (2016)] require suppression of Appellant's chemical test results where the request for a blood draw was not supported by probable cause?

Appellant's Brief at 4 (unnecessary capitalization omitted).

When reviewing an order denying a defendant's motion to suppress, we must determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa. Super. 2000). In so doing, we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon*, 798 A.2d 761, 765 (Pa. Super. 2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may

reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease*, 750 A.2d at 323–24.

> [w]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015).

The trial court denied Appellant's suppression motion, finding that Trooper Meko had reasonable suspicion to believe that Appellant was driving under the influence in violation of the vehicle code. Trial Court Opinion, 4/13/2016, at 3-4. "The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a 'particularized and objective basis' for suspecting the individual stopped." *Commonwealth v. Reppert*, 814 A.2d 1196, 1203

(Pa. Super. 2002). Therefore, the fundamental inquiry of a reviewing court must be an objective one, "namely, whether 'the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.'" ***Id.*** (quoting ***Commonwealth v. Zhahir***, 751 A.2d 1153, 1156 (Pa. 2000)).

Here, Trooper Meko testified that he observed Appellant's vehicle swerving on the highway, straddling the yellow center turn lane, and crossing the fog line, N.T., 8/25/2015, at 4, 8, 14-15, and these observations prompted him to activate his vehicle's dashcam recorder. Although the video of the stop does not show the entirety of the observed conduct, the court was free to believe Trooper Meko's testimony. Therefore, we are bound by the court's factual finding, which is supported by the record, that Trooper Meko had reasonable suspicion to believe that Appellant was driving under the influence. Thus, we find no error in the court's denial of Appellant's suppression motion.

With respect to Appellant's second issue, whether the holding in ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), requires suppression of the results of Appellant's blood draw, we are constrained to find waiver. Although ***Birchfield*** and this Court's interpretation of that decision in ***Commonwealth v. Evans***, 153 A.3d 323 (Pa. Super. 2016), raise a question as to the voluntariness of Appellant's consent to the warrantless

blood draw, it is well established "that in order for a new rule of law to apply retroactively to a case pending on direct appeal, **the issue had to be preserved at all stages of adjudication up to and including the direct appeal**." *Commonwealth v. Tilley*, 780 A.2d 649, 652 (Pa. 2001) (emphasis added; citations omitted). Appellant herein did not challenge the voluntariness of his consent to the blood draw at any point before the trial court. Accordingly, the claim is waived.

Judgment of sentence affirmed.

Judge Solano joins.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/19/2017