J-A04003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES THOMAS | |
| Appellant | No. 931 EDA 2020 |

Appeal from the Judgment of Sentence entered March 11, 2020
In the Court of Common Pleas of Northampton County
Criminal Division at No: CP-48-CR-0001855-2018

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    Filed: July 28, 2021

Appellant, Charles Thomas, appeals from the judgment of sentence imposed on March 11, 2020, in the Court of Common Pleas of Northampton County following his convictions of resisting arrest, disorderly conduct, and public drunkenness.[1]  Appellant contends the trial court committed error of law by refusing to decide whether Appellant was subjected to a lawful arrest because a lawful arrest is a required element of resisting arrest.  Appellant also argues insufficiency of evidence to support his convictions and trial

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5104, 5503(a)(1), and 5505, respectively.  A jury acquitted Appellant on a charge of simple assault.  18 Pa.C.S.A. § 2701(a)(1).

court error relating to evidentiary rulings. Following careful review, we vacate the judgment of sentence.

At approximately 2:30 a.m. on March 17, 2018, three City of Easton police officers were standing in the vestibule of a Wawa convenience store in Easton, talking and drinking the coffee they had just purchased in the store. The officers observed Appellant walking and acting oddly inside the store. The officers eventually entered the store and suggested to Appellant that he retrieve his food order and leave the premises. As the trial court explained, the officers' encounter with Appellant became physical and resulted in Appellant being charged with the crimes of which he was convicted. Trial Court 1925(a) Opinion, 5/22/20, at 1.

In its rule 1925(a) opinion, the trial court provided detailed summaries of the trial testimony presented by the Commonwealth in its case-in-chief, including—and particularly relevant to the issues on appeal—testimony of the three officers with whom Appellant interacted at the Wawa. *Id.* at 2-14. Those three officers were Officers Ligouri, Lollis, and Cornelius, all of whom initially observed Appellant from the vestibule and then interacted with him and store employees inside the store. In essence, the officers explained that Appellant was acting oddly, and might have been under the influence of something. They observed him walking and stumbling in the store with a candy bar hanging out of his mouth, walking while appearing to be licking the air, and interacting with his cellphone but not having a conversation with

anyone. From discussions with store employees, they learned that Appellant had ordered food, had consumed the food inside the store, and had placed and paid for another food order.[2] That second order was on the counter, ready to be picked up.

The officers testified that Officer Cornelius asked Appellant from the doorway if he was all right, but Appellant walked away. When Appellant entered the vestibule, Officer Lollis asked Appellant if he was waiting for a ride. Appellant responded, "I'm not talking to you," and went back into the store. *Id.* at 9 (quoting N.T., 1/8/20, at 10). "Considering 'all of the odd behaviors, the time of day, the weekend that it was,' Officer Lollis said he wanted to make sure that [Appellant] was okay." *Id.* (quoting N.T., 1/8/20, at 10). Officer Lollis suggested to Appellant that it was time for him to leave if he had completed his purchases, prompting Appellant to tell the officers to "get out of my face." *Id.* at 10 (quoting N.T., 1/8/20, at 12). "Officer Lollis recalled that they 'told him that, if he's not going to make any more purchases, retrieve his food that he already paid for and leave the store. This went on for several – several minutes before we finally took him, walked him out of the store.'" *Id.* (quoting N.T., 1/8/20, at 12).

According to Officer Liguori:

_____

[2] Although the officers had just purchased their coffee in the store, there was no suggestion that they had observed Appellant or that any employee or customer expressed any concern about Appellant's presence in the store while the officers were making their purchases.

> After confirming that [Appellant] was not further welcome in the [store], I went to Officer Cornelius who was still trying to talk to [Appellant] at the order screens.[3]  He was still not listening to Officer Cornelius so I took ahold of [Appellant's] right arm, upper arm, and said it was time to go.
>
> I said, can you please leave the store.  He still would not leave.  So I started to physically escort him in the direction, **which he did comply**.  We walked outside – we started walking towards the vestibule door, the first door.

*Id.* at 4-5 (quoting N.T., 1/7/20, at 41-42) (emphasis added).

As the court explained, "Officer Cornelius stated that [Appellant] "began to cause a disturbance by just continuing to say, stop harassing me." *Id.* at 12 (quoting N.T., 1/8/20, at 101).  "Officer Cornelius recalled that 'Officer Liguor[i] grabbed [Appellant] by his arm and said, you're leaving the store now, and escorted him out.'" *Id.* at 12-13 (quoting N.T., 1/8/20, at 103).  Officer Cornelius testified that Appellant "did ask for his food, which I did grab on the way out.  It was sitting on the counter.  I grabbed – I believe a Pepsi bottle and a bag of food we took outside with us."  N.T., 1/8/21, at 103.

According to Officer Liguori, he and Appellant proceeded through the first door into the vestibule.  "As we were walking out that vestibule door [to

---

[3] The trial court noted that Appellant became "aggravated" and said, "I'm not talking to you" and "you're not harassing me" when Officer Cornelius asked Appellant if he had completed his purchase.  *Id.* at 12 (quoting N.T., 1/8/20, at 100-01).

the outside], he immediately pulled away from me." *Id.* (quoting N.T., 1/7/20, at 42). Officer Liguori explained:

> [Appellant i]mmediately pulled away from me, told him he needs to identify himself. He would not identify himself. He was unable to fully stand without wobbling. His wallet was sticking out of his back pocket, one of his rear cheek pockets of his pants. He started backing up. I took ahold of him. At this point, I took ahold of him by the right side of his – his right arm, and Officer [Cornelius] put his purchases down and took his left arm. This time he was trying to pull away. **He was told he was under arrest** and to put his hands behind his back. . . . At that point, he was still pulling and tightening his muscles.

*Id.* (quoting N.T., 1/7/20, at 42-43) (emphasis added).

In its summary of the testimony offered by Officer Lollis, the trial court indicated:

> Officer Lollis also recalled that "**[a]s we got outside of the store, at this point, it escalated past just a mere encounter, which is just making contact with a citizen. We had to investigate to make sure [Appellant] was okay to leave on his own**." Officer Lollis stated that the officers were trying to get [Appellant's] identification "[a]nd at this point, he was yelling, screaming, despite many verbal attempts to try and get him to just calm down so we can try to figure out the situation."
>
> Officer Lollis further testified that [Appellant] "was turned and facing toward the wall" and Officer Lollis was "directly behind him and Officer Liguori was to his right and Officer Cornelius was to his left." Officer Lollis said that "**it was determined that he was going to be placed under arrest for a summary charge at this point, disorderly conduct**." Officer Lollis recalled difficulty with placing [Appellant] under arrest, similar to the testimony provided by Officer Liguori. Officer Lollis said that he lost his balance and Officer Liguori fell to the ground with [Appellant] on top of him. Officer Liguori "saw [Appellant] on the ground with what appeared to be a cut to his head and bleeding. When looking at the scene, I saw a corner of the brick

wall sticking out and I actually saw what looked like hair sticking out on the brick wall."

Officer Lollis provided similar testimony regarding [another officer] arriving to the scene, providing care to [Appellant], and then calling for EMS. Officer Lollis said that **when he was helping [Appellant], he smelled alcohol.**

*Id.* at 10-11 (quoting N.T., 1/8/20, at 13-14, 17, 20, 22) (emphasis added).

When EMTs arrived on the scene, Appellant was unconscious and bleeding from the head. He was taken to a hospital in Bethlehem for treatment. Appellant was subsequently charged with resisting arrest, simple assault, disorderly conduct, and public drunkenness.

On October 19, 2018, the Honorable Paula A. Roscioli issued an order scheduling a pretrial conference for May 24, 2019 and setting that date as the deadline for the parties to disclose the names and addresses of eyewitnesses and expert witnesses. The order further set May 17, 2019 as the deadline for filing motions *in limine*; May 29, 2019 as the deadline for filing points for charge and the filing of a proposed verdict sheet; and June 3, 2019 as the trial date. Order, October 19, 2018.

On May 3, 2019, Appellant filed a motion styled "Pretrial Motion/Motion to Dismiss/Habeas Corpus," seeking dismissal of, *inter alia*, the resisting arrest charge, contending that the Commonwealth's preliminary hearing evidence consisted solely of testimony from Officer Liguori; that the Commonwealth failed to establish a basis for a warrantless arrest under 42

Pa.C.S.A § 8902(a)[4] because it failed to establish that Appellant's conduct inside the Wawa imperiled anyone's personal security or endangered public or private property; and that the threshold legal question of whether Appellant was subject to a legal arrest should be answered prior to trial. Appellant's Pretrial Motion/Motion to Dismiss/Habeas Corpus, 5/3/19, at ¶¶ 6-30. On May 9, 2019, Judge Roscioli denied the motion as untimely. Order, 5/9/19, at ¶ 1.[5]

On August 9, 2019, the case was reassigned to the Honorable Samuel P. Murray. The case proceeded to a jury trial before Judge Murray on January 7, 2020. At the conclusion of trial, the jury found Appellant guilty of resisting arrest but not guilty of simple assault. The trial court then stated on the record, "Based upon the evidence that I heard, I am finding him guilty of both public drunkenness and of disorderly conduct." N.T., 1/13/20, at 46.

_____

[4] Pursuant to 42 Pa.C.S.A. § 8902(a), for various offenses, including disorderly conduct and public drunkenness, "a police officer shall, upon view, have the right of arrest without warrant upon probable cause when there is ongoing conduct that imperils the personal security of any person or endangers public or private property[.]"

[5] Judge Roscioli's order simply indicates: "Defendant's Motion to Dismiss is **DENIED** as untimely." Order, 5/9/19, at ¶ 1 (emphasis in original). The order also addressed Appellant's discovery motions but was silent as to the basis for the court's determination that the habeas motion was untimely. While we believe Judge Roscioli erred in failing to rule on the merits of the habeas motion, we are unable to analyze the propriety of the ruling due to the lack of any stated basis for denying the motion.

On March 11, 2020, the trial court imposed a sentence of 23 months of county probation for resisting arrest and a $300 fine for each summary offense. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider three issues on appeal:

1. Did the trial court err by refusing to decide whether Appellant was subjected to a "lawful" arrest based on evidence presented at trial?

2. Was the evidence insufficient as a matter of law to prove beyond a reasonable doubt Appellant committed the offense of resisting arrest and summary offenses of public drunkenness and disorderly conduct?

3. Did the trial court commit reversible error with erroneous evidentiary issues?

Appellant's Brief at 6.[6]

In his first issue, Appellant argues trial court error for refusing to decide whether Appellant was subjected to a lawful arrest based on evidence

_____

[6] The Commonwealth contends the "lawful arrest" issue is waived because it was not preserved in Appellant's Rule 1925(b) statement, suggesting Appellant "challenges only whether the trial court addressed the issue or not, not the underlying issue of whether the arrest was lawful." Commonwealth Brief at 12. We disagree. Rule 1925(b)(v) provides, in relevant part, that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(v). Here, Appellant challenged the sufficiency of evidence supporting the resisting arrest conviction, and a lawful arrest is an element of that crime. Further, as will be discussed herein, the trial court addressed resisting address not only in terms of the coordinate jurisdiction rule, but also in terms of Appellant's sufficiency arguments. *See* Rule 1925(b) Opinion, 5/22/20, at 21-24 and citations to notes of testimony therein.

presented at trial. Here, the trial court restated and confirmed its position "that the legality of the arrest was an issue that was not before the jury[.]" N.T., 1/13/20, at 21-22. Instead, the trial court instructed the jury that to find Appellant guilty of resisting arrest, the jury must find, beyond a reasonable doubt, "that [Appellant] created a substantial risk of bodily injury to a police officer [and that Appellant] did so with the intent of preventing the police officer from discharging a duty." *Id.* at 37. However, "[a] lawful arrest is an element of the crime of resisting arrest . . . .. Thus to be convicted of resisting arrest, the underlying arrest must be lawful." *Commonwealth v. Jackson*, 924 A.2d 618, 620 (Pa. 2007). Therefore, a determination of whether the underlying arrest was lawful should have been made before permitting the jury to consider whether Appellant was guilty of resisting arrest.

> In its Rule 1925(a) opinion, the trial court explained:
>
> At trial, the Commonwealth raised an objection to [Appellant] raising constitutional issues being presented to the jury. Defense counsel stated that they were trying to establish that no crime was committed in the Wawa, which is related to whether the arrest was lawful. This jurist held a sidebar conference and asked defense counsel if pretrial motions were filed on the issue. We clarified for the record that there were no suppression issues. This court elaborated that "[t]he proceedings that that [sic] would have been done in would have been either a motion to quash the preliminary hearing transcript, to attack one of the elements or one or all of the elements of resisting arrest or a habeas corpus proceeding." N.T.[, 1/7/2020, at 182-83].

Trial Court Rule 1925(a) Opinion, 5/22/20, at 21-22 (additional references to notes of testimony omitted).

- 9 -

At the close of the Commonwealth's case-in-chief, Appellant moved for a judgment of acquittal pursuant to Pa.R.Crim.P. 606(A)(1)[7], challenging the sufficiency of the evidence on the resisting arrest charge. N.T., 1/9/20, at 123-24. Appellant argued that the court was required to determine whether Appellant was subjected to a lawful arrest. The court asked why the legality of the arrest had not been raised in a pretrial motion. *Id.* at 125. Appellant's counsel explained that the issue was raised in a habeas motion, but the motion was denied as untimely on May 7, 2019 by Judge Roscioli. *Id.* The trial court did not make a determination as to the legality of the arrest but instead denied the motion for judgment of acquittal, stating, "I do not believe that the defense has given enough proof for a judgment of acquittal – or argument, I should say, for a judgment of acquittal." *Id.* at 129.

At the conclusion of the defense case, counsel again moved for a judgment of acquittal on the charge of resisting arrest pursuant to Pa.R.Crim.P. 606(A)(2)[8], arguing the Commonwealth failed to meet its

_____

[7] Pa.R.Crim.P. 606(A)(1) provides that "[a] defendant may challenge the sufficiency of evidence to sustain a conviction" by "a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief[.]"

[8] Pa.R.Crim.P. 606(A)(2) provides that "[a] defendant may challenge the sufficiency of evidence to sustain a conviction" by "a motion for judgment of acquittal at the close of all the evidence[.]"

burden that the arrest was lawful. The trial court inquired as to whether the issue was addressed by Judge Roscioli. Counsel reminded the court that the issue was not decided because the motion was denied as untimely. N.T., 1/10/20, at 62-64. The court ultimately concluded that it was a matter for the jury and, therefore, denied the motion. *Id.* at 69.

During the charging conference, counsel repeated the assertion that having the jury decide whether the arrest was unlawful was inappropriate and submitted that it was a question for the court. *Id.* at 79. The trial judge responded that he was relying on the record and Judge Roscioli's denial of Appellant's pretrial motion as untimely, citing the coordinate jurisdiction rule. *Id.* at 80. When the Commonwealth was asked its position on "whether or not there was a lawful arrest as a pretrial issue was not heard by Judge Roscioli and whether or not it's still before the court[,]" counsel for the Commonwealth responded, "It is not before this court, Judge. . . [b]ecause [Judge Roscioli] has ruled that all pretrial motions have been resolved. . . . Judge Roscioli has ruled on all of this." *Id.* at 82-83. When Appellant's counsel reiterated that the motion was denied as untimely, the court replied, "It's been decided[,]" and again invoked the coordinate jurisdiction rule. *Id.* at 83-84.

Because the trial court cited the coordinate jurisdiction rule as a basis for denying Appellant's motions for acquittal, we first address the coordinate

jurisdiction rule and the trial court's reliance on Judge Roscioli's denial of Appellant's May 3, 2019 habeas motion as untimely.

In *Kelly v. Carman Corp*., 229 A.3d 634 (Pa. Super. 2020), this Court discussed the law of the case doctrine, noting:

> "The law of the case doctrine is comprised of three rules[.]" *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282 (Pa. Super. 2016). The first two rules are inapplicable to the current appeal, as they concern proceedings following a prior appeal in same case. According to the germane third rule, "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court **may not alter the resolution of a legal question previously decided** by the transferor trial court." *Id.* (quoting *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995); citing *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25, 29 (2003)).

*Id.* at 649 (emphasis added). *See also Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003) ("Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge.") .

In support of its ruling that the coordinate jurisdiction rule precluded consideration of Appellant's motions for acquittal, the trial court explained that there had been no substantial change in the law or the facts of the case to warrant altering Judge Roscioli's rejection of Appellant's habeas motion. However, the trial court failed to recognize that Judge Roscioli's denial was based on timeliness, and did not constitute "the resolution of a legal question." Because Judge Roscioli's order did not address, let alone decide,

the merits of Appellant's habeas motion, the trial court improperly invoked the coordinate jurisdiction rule in declining to consider Appellant's Rule 606 motions because its ruling could not "alter the resolution of a legal question previously decided." As this Court recognized in **Mariner Chestnut Partners, supra**, "To determine whether the law of the case doctrine applies, a court must examine the rulings at issue in the context of the procedural posture of the case. The coordinate jurisdiction rule does not apply where the motions ruled upon are of a different type." **Mariner Chestnut Partners**, 152 A.3d at 282-83 (citations omitted). **See also Commonwealth v. McCulligan**, 905 A.2d 983, 988 (Pa. Super. 2006) (coordinate jurisdiction rule did not apply because procedural posture of a wiretap authorization differed from that of a suppression motion).

Even if Judge Roscioli had denied the habeas motion on the merits, the defense would nevertheless be entitled to move for judgment of acquittal at the end of the Commonwealth's case-in-chief and at the conclusion of the defense case based on the evidence presented at trial. Clearly, the sufficiency of evidence challenged in a habeas motion prior to trial represents a determination made in a different procedural context from one based on evidence actually presented during trial and challenged in a motion for acquittal. Therefore, we find the trial court erred in basing its denial of Appellant's Rule 606 motions on the coordinate jurisdiction rule.

Having determined that the trial court improperly relied upon the coordinate jurisdiction rule, we turn to Appellant's second issue, whether the evidence was sufficient to sustain Appellant's convictions. "In reviewing a sufficiency challenge, a court determines whether the evidence, viewed in the light most favorable to the verdict winner, is sufficient to enable the fact-finder to find **every element** of the crime beyond a reasonable doubt." *Jackson, supra*, 924 A.2d at 620 (emphasis added).

We first consider Appellant's conviction for resisting arrest. An individual commits the crime of "resisting arrest" when, "with the intent of preventing a public servant from effecting a **lawful arrest** or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104 (emphasis added). "The language of the statute is quite clear and unambiguous; in order to be convicted of resisting arrest, the underlying arrest must be lawful." *Commonwealth v. Maxon*, 798 A.2d 761, 770 (Pa. Super. 2002) (citation omitted); *see also Jackson, supra*, 924 A.2d at 620 (because a lawful arrest is an element of the crime of resisting arrest, the underlying arrest must be lawful). It is well settled that "a valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (citation omitted). Whether probable

cause existed to arrest Appellant is a legal determination for which our scope of review is plenary and our standard of review is *de novo*. ***Jackson***, 924 A.2d at 620.

Here, we must determine whether the officers had probable cause to seize Appellant and remove him from the Wawa for disorderly conduct. Pursuant to 18 Pa.C.S.A. § 5503(a)(1), "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he [] engages in fighting or threatening, or in violent or tumultuous behavior."

Our Supreme Court has cautioned that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people" and "it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." ***Hock***, 728 A.2d at 947 (citation omitted). Rather, the offense of disorderly conduct has the "specific purpose . . . to preserve the public peace." ***Id.*** (citation omitted); ***see also Commonwealth v. Mauz***, 122 A.3d 1039, 1041 (Pa. Super. 2015). "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." ***Hock***, 728 A.2d at 946 (citation omitted).

In ***Hock***, our Supreme Court reversed the defendant's conviction for resisting arrest because the defendant's use of a single curse word did not give rise to probable cause for disorderly conduct under Section 5503(a)(1).

*Id.* at 946 (noting that the defendant's use of a "single epithet, uttered in a normal tone of voice while walking away from a police officer, did not alarm or frighten him, and there were no bystanders"). As in **Hock**, Appellant here contends the police had no reasonable cause to arrest him for disorderly conduct. "While Appellant may have been acting odd, the clear evidence is that he did not commit any crime in the store and never should have been arrested." Appellant's Brief at 36.

Our review of the evidence in the light most favorable to the Commonwealth leads us to conclude that the officers lacked probable cause to arrest Appellant for disorderly conduct under Section 5503(a)(1). When Officer Liguori was asked if Appellant committed any crime while in the Wawa, he responded, "Yes. When I made contact with him." N.T., 1/7/20, at 122. However, rather than identify any crime, the officer went on to describe the "clues" he observed, such as "movements, stumbling, actions with the phone." *Id.* He then acknowledged that based on his observations, Appellant did not commit a crime inside the Wawa. *Id.* Up until the time Officer Ligouri took hold of Appellant's arm to walk him out of the store, Appellant had not committed a crime. *Id.* at 124. According to the officer, it was when Officer Ligouri walked Appellant out of the vestibule to the outside of the store that Appellant committed a crime. *Id.* at 124-25.

As Appellant argues,

There is no evidence that Appellant's conduct or behavior within the Wawa prior to the police entering after him, amounted to

"ongoing conduct that imperils the personal security of any person or endangers public or private property" as required by 42 Pa.C.S.[A. §] 8902. Surely, if Appellant's conduct or behavior was in fact putting people or property in danger, the police officers would not have simply stood nearby drinking their coffee and watching for approximately fifteen minutes before they did anything about it.

Based on the evidence it is clear that there was no "ongoing conduct" as required by 42 Pa.C.S.[A. § 8902], and that the police escalated the situation with their display of authority and their refusal to allow Appellant to exercise his right to walk away. Appellant did not begin yelling in the store until after the police followed him around the store and surrounded him at the sandwich kiosk and order[ed] him he had to leave; the police provoked the response from Appellant and then claim his yelling was the reason he was being questioned and that his disorderly conduct was ongoing and imperiled people or property.

Appellant's Brief at 46-47. We agree with Appellant's assessment. Having reviewed the evidence in the light most favorable to the Commonwealth, we cannot find that, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," Appellant "engage[d] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S.A. § 5503(a)(1). According to Officer Ligouri, "I took him and got him toward the exit and he did comply." N.T., 1/7/20, at 116. The reason Officer Ligouri took Appellant out of the store was that "[h]e had no purpose being in the store[.]" *Id.* at 116-17. There was no evidence that Appellant had committed any crime inside the Wawa, based on Officer Ligouri's observations. *Id.* at 125. According to Officer Ligouri, the officers and Appellant were outside the store when Appellant was told he was under arrest. N.T., 1/7/20, at 43. Similarly, Officer Lollis testified that it was not

- 17 -

until Appellant was outside in the store parking lot that "it was determined that he was going to be placed under arrest for a summary charge at th[at] point, disorderly conduct . . . for his conduct outside of the store." N.T., 1/8/20, at 17, 43.

The evidence is insufficient to support a conviction for disorderly conduct. Therefore, Appellant was subjected to an unlawful arrest and his conviction for resisting arrest cannot stand. Appellant therefore is entitled to have his convictions for both disorderly conduct and resisting arrest vacated.

We next consider Appellant's conviction for public drunkenness. Pursuant to 18 Pa.C.S.A. § 5505, "[a] person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." As Appellant argues,

> The only evidence of Appellant's intoxication was, arguably his unusual and non-criminal behavior in the Wawa, and [his BAC value]. These officers had plenty of opportunity to make observations about Appellant and there was no evidence presented that he exhibited slurred speech or had bloodshot, glassy eyes. There was no evidence that he had a strong odor of alcohol on his breath; the only evidence of an odor of alcohol was when he was bleeding on the ground [outside of the Wawa].

Appellant's Brief at 68. For instance, Officer Lollis testified that he detected a "moderate" odor "of an alcoholic beverage coming from his person and the blood actually on the ground." N.T., 1/8/20, at 22. Officer Ligouri made the determination the Appellant was under the influence of alcohol "after he was

on the ground and bleeding." ***Id.*** at 82. Nonetheless, even if Appellant's odd behavior led officers to suspect Appellant was under the influence, and even if they detected the odor of alcohol as Appellant lay bleeding on the ground, there was no evidence to suggest Appellant was "manifestly under the influence of alcohol or a controlled substance to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S.A. § 5505. Viewing the evidence in the light most favorable to the Commonwealth, we find the evidence was insufficient to support a conviction for public drunkenness. Therefore, we also vacate Appellant's conviction for public drunkenness.[9]

Where a defendant has been convicted of numerous offenses and we conclude some of the convictions are to be vacated, we ordinarily would remand for resentencing for the remaining offenses. Here, however, we conclude the evidence was insufficient to support all of the crimes charged and tried. Under these circumstances, we therefore not only vacate each conviction, but also vacate Appellant's judgment of sentence because there are no remaining convictions for resentencing.

Judgment of sentence vacated.

Judge Pellegrini joins the memorandum.

Judge King notes her dissent.

---

[9] In light of our disposition of Appellant's sufficiency issues, we need not address the evidentiary challenges raised in Appellant's third issue.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/28/21</u>