**COMMONWEALTH OF PENNSYLVANIA,**
Appellant

v.

**Samell MACK.**

Superior Court of Pennsylvania.

Submitted March 25, 2008.
Filed July 11, 2008.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Commonwealth, appellant.

Michael P. Parkinson, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., PANELLA and KELLY, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 The Commonwealth appeals from the order granting Samell Mack's[1] ("Mack") omnibus pre-trial motion to suppress evidence.[2] Upon review, we reverse and remand for trial.

¶ 2 The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows. At approximately 2:00 a.m. on November 8, 2005, Officer Nicholas Morris and his partner, Officer Patricia Domico, were on routine patrol in a marked police vehicle in South Philadelphia. Their attention was drawn to Mack's vehicle as it was operating without headlights or taillights. (Notes of testimony, 11/22/06 at 10–12, 15,

23–24.) The police followed Mack's vehicle for approximately three and a half blocks; the officers then activated their sirens and emergency lights and Mack stopped his vehicle. (Id. at 15, 24.)

¶ 3 As Officer Morris approached the driver's side of the vehicle, he saw Mack "reaching through the center console, around underneath the back seats. Also in his waistband area when I got up to his driver's side window." (Id. at 13, 26–27, 42.) The officer explained: "I could see him reaching. I couldn't see where he was reaching to, but I could see him reaching. And also reaching in the area of his waistband." (Id. at 17.) Officer Morris further testified that it appeared Mack was reaching either under his seat or to the floor area of the back seat. (Id. at 26–27.) The officer asked Mack for his driver's license, registration, and insurance, but Mack was unable to produce these items. (Id. at 15–16.) The officer noted that Mack was nervous, as his hands were shaking and his voice was cracking. (Id. at 13, 16.) Mack was the only occupant in the vehicle. (Id. at 15.)

¶ 4 Officer Morris testified that for his safety and for the safety of his fellow officer, he ordered Mack out of the vehicle to conduct a Terry[3] frisk of his person for weapons. (Id. at 13, 17–18.) During the search, the officer felt a large plastic baggie in Mack's waistband area. " . . . I could feel this approximately 4 inch by 6 inch bag containing smaller objects, which in my experience was the size, shape and packaging of narcotics." (Id. at 13.) Upon further inspection, the baggie con-

---

1. We note a reference to Mack by an incorrect first name in appellee's brief.

2. This appeal is permissible as the Commonwealth has certified in good faith that the suppression order submitted for our review substantially handicaps the prosecution and

the appeal is not intended for delay purposes. Pa.R.A.P. 311(d); Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985).

3. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

tained 24 red tinted Ziploc baggies with an off-white chunky substance and 59 heat-sealed clear plastic baggies containing blue glassine packets filled with an off-white powder. (*Id.* at 13–14.) At the time of the incident, Officer Morris had been on the police force for a little under nine years; he testified that he had made at least 50 arrests involving controlled substances. (*Id.* at 20.) He testified that he "know[s] [drugs are] packaged in small Ziploc baggies." (*Id.* at 21.)

¶ 5 Mack was immediately arrested and on November 22, 2006, a hearing on his motion to suppress was held before the Honorable Lillian H. Ransom. Mack alleged the initial stop of his vehicle was illegal, Officer Morris impermissibly ordered him out of the vehicle, and the pat-down was not supported by reasonable suspicion. (*Id.* at 9.) The sole witness who testified at the hearing was Officer Morris. Immediately following the hearing, the suppression court entered an order granting Mack's suppression motion, finding that the officer lacked reasonable suspicion to conduct a pat-down for weapons. (*Id.* at 71.) The Commonwealth filed this appeal on December 22, 2006; that same day, the Commonwealth filed a Rule 1925(b) statement of matters complained of on appeal. The trial court subsequently filed its opinion.

¶ 6 The Commonwealth raises one issue for our consideration: whether the trial court erred in granting the suppression motion as Officer Morris was justified in conducting a limited safety-related frisk of Mack's person. The Commonwealth argues the officer articulated he had reasonable suspicion to suspect that Mack may be armed or engaged in criminal activity. (Commonwealth's brief at 7.)

¶ 7 When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Henry,* 943 A.2d 967, 969 (Pa.Super.2008.). We must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *Id.* In appeals where there is *no meaningful* dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case. *Commonwealth v. Ruey,* 586 Pa. 230, 892 A.2d 802, 807 (2006).

■ ¶ 8 As provided for by statute, anytime a police officer has "reasonable suspicion" to believe a violation of the Motor Vehicle Code is occurring or has occurred, the officer may initiate an investigatory vehicle stop.[4] 75 Pa.C.S.A § 6308. Incident to this stop, an officer may check the vehicle's registration, the driver's license and obtain any information necessary to enforce provisions of the motor vehicle code. *Commonwealth v. Rosas,* 875 A.2d 341, 346 (Pa.Super.2005). Additionally, police may request both drivers and their passengers to alight from a lawfully stopped car as a matter of right. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096, 1102 (1995), *appeal denied,* 544 Pa. 642, 664 A.2d 972 (1995).

---

4. It is undisputed that the initial stop of the vehicle was proper. (*See* trial court opinion, 6/19/07 at 3; appellee's brief at 8.)

¶ 9 "[A]llowing police officers to control all movement in a traffic encounter ... is a reasonable and justifiable step towards protecting their safety." *Commonwealth v. Pratt*, 930 A.2d 561, 567–568 (Pa.Super.2007), *appeal denied,* —— Pa. ——, 946 A.2d 686 (2008).

> 'If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons.' *Commonwealth v. E.M./Hall*, 558 Pa. 16, 735 A.2d 654, 659 (1999). In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. *See Commonwealth v. Gray*, 896 A.2d 601, 606 (Pa.Super.2006). When assessing the validity of a *Terry* stop, we examine the totality of the circumstances, *see id.,* giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch. *See Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153, 1158 (2000).

*Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa.Super.2007).

¶ 10 While the law of search and seizure is constantly evolving, its focus remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.Super.2004). The court must be guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon. *Zhahir, supra* at 555, 751 A.2d at 1158.

¶ 11 Instantly, regarding the suppression of the evidence, the trial court explained:

> although the police legitimately pulled the defendant over for a motor vehicle violation, they did not have enough evidence to suspect the defendant had weapons in his possession, which may have provided the requisite reasonable suspicion to ask the defendant to exit his vehicle, to be patted down for the officer's safety.

Trial court opinion, 6/19/07 at 3. In its opinion, the trial court found the circumstances of this case to be factually distinguishable from *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209 (1984), and *Commonwealth v. Rosa*, 734 A.2d 412 (Pa.Super.1999), *appeal denied,* 561 Pa. 693, 751 A.2d 189 (2000).[5] (Trial court opinion, 6/19/07 at 4.) The trial court emphasized that the police officer in *Chamberlain* observed the defendant attempting to conceal a black handgun. "Although the hour was late, and [Mack] made some reaching movements, there were no facts to suggest that there was a weapon in the vehicle." (*Id.*) The trial court also relied on *Rosa*, pointing out that the officer in *Rosa* also saw weapons in plain view and the officer was outnumbered by the occupants in the vehicle. (*Id.*)

¶ 12 We disagree with the suppression court's legal conclusion and find that Officer Morris was clearly entitled to secure his own safety, and that of Officer

---

**5.** The primary issue in *Rosa* did not involve a *Terry* frisk; rather, the issue was whether the officer was authorized to conduct a weapons search of the vehicle.

Domico, with a *Terry* frisk. First, we disagree with the suggestion that the officer has to see a weapon in the vehicle. An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry, supra; Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa.Super.2002).

¶ 13 Additionally, we disagree that the fact that Mack was alone in the car made the frisk unreasonable. Again, it is the totality of the circumstances and the facts which give rise to common sense concerns for safety which dictate the legitimacy of the frisk. *See E.M./Hall, supra; Zhahir, supra.* The fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer's safety is at risk, but the reverse scenario does not amount to a lesser chance that the suspect is not armed.

¶ 14 At the suppression hearing, Officer Morris set forth the specific facts that led him to conclude that his safety might be at risk. He testified that at 2:00 a.m., he was investigating a traffic violation with a fellow officer. As he was walking up to the vehicle, he observed the occupant reaching past the center console into the back seat area of the car. When Officer Morris approached the window, Mack was reaching in the waistband area of his pants. Mack appeared to be nervous throughout their encounter; he could not provide a driver's license, vehicle registration, or proof of insurance.

¶ 15 Based on the facts found by the suppression court, we find that the totality of the circumstances led Officer Morris to reasonably suspect that Mack may be armed. Mack's reaching movements in the vehicle while the officer approached, in conjunction with the time of day, Mack's nervousness and lack of proper identification, could lead Officer Morris to reasonably conclude that his safety was in jeopardy. As such, Officer Morris was justified in subjecting Mack to a *Terry* frisk in order to ensure his own safety and the safety of his fellow officer. *See Commonwealth v. Mesa*, 453 Pa.Super. 147, 683 A.2d 643, 646 (1996) (finding officer had articulable suspicion the appellant might be armed and dangerous when he observed the appellant "moving around a great deal" in the passenger seat); *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709, 712 (1992), *appeal denied*, 534 Pa. 654, 627 A.2d 731 (1993) (finding officer had articulable suspicion the appellant might be armed and dangerous when he observed the appellant's "furtive movements in stuffing a brown bag under the front passenger seat of the vehicle."). *See also Gray, supra* at 606 n. 7 (stating that while nervousness alone will not establish reasonable suspicion, it is a relevant factor to be considered in the totality of the circumstances).

¶ 16 Accordingly, we find that the trial court abused its discretion when it suppressed the evidence. Therefore, we reverse its suppression order and remand for proceedings consistent with this opinion.

¶ 17 Order reversed. Case remanded. Jurisdiction relinquished.