J-A11024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AKEEM METTS, | |
| Appellant | No. 618 EDA 2014 |

Appeal from the Judgment of Sentence of February 2, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005184-2013

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 05, 2015**

Appellant, Akeem Metts, appeals from the judgment of sentence entered on February 2, 2014 following his bench trial convictions for possession of a controlled substance, possession with intent to deliver a controlled substance (PWID), and conspiracy.[1]  Upon careful review, we affirm the convictions, but vacate Appellant's sentence and remand for resentencing.

We briefly summarize the facts of this case as follows.  On April 25, 2013, at 8:45 p.m., Officer Marlowe Freeman, a uniformed officer with the City of Chester Police Department, was speaking with undercover Officer George Gizzi in a parking lot at 9th Street and the Avenue of the Americas

_____

[1]   35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 903, respectively.

when they heard gunshots a couple of blocks away. Both officers proceeded separately to the 900 block of Madison Avenue where the shots allegedly originated. Officer Freeman was the first to arrive. He observed a blue Mercury automobile occupied by two individuals pull out of a parking space and then quickly pull back in to its original position. Appellant was driving. Officer Freeman approached the car from the front and told the occupants to show their hands. Both occupants failed to do so and were seen reaching toward the center of the front seat. Officer Freeman drew his weapon and ordered the occupants to show their hands and exit the vehicle. Officer Gizzi arrived on the scene and heard Officer Freeman shouting, "Show me your hands." Appellant and his passenger put their hands up and exited the vehicle. Officer Gizzi saw a package of glassine bags partially wrapped in aluminum foil sitting on the front passenger seat of the vehicle. He suspected the package contained marijuana and tests later confirmed his suspicion. The police arrested both occupants of the vehicle and, in a search incident to that arrest, recovered cocaine from the passenger. The Commonwealth charged Appellant with the aforementioned crimes.

On September 6, 2013, Appellant filed a motion to suppress the recovered evidence. The trial court held a hearing on October 3, 2013. The trial court denied the motion and held a bench trial on December 30, 2013. On December 31, 2013, the trial court found Appellant guilty of all charges. On February 12, 2014, the trial court sentenced Appellant to one to two years of imprisonment for PWID with a consecutive term of two years of

probation. Additionally, the trial court sentenced Appellant to consecutive terms of probation of two years of probation for possession of a controlled substance and one year of probation for conspiracy. In sum, the trial court imposed an aggregate term of one to two years of imprisonment, followed by five years of probation. This timely appeal resulted.[2]

On appeal, Appellant raises two claims for our consideration. First, Appellant asserts that the trial court erred in refusing to grant suppression because he was subject to a custodial arrest when he was seized without

_____

[2] The trial court summarized the procedural history that followed:

> On February 18, 2014, Appellant filed a timely *pro se* [notice of] appeal. [The trial court] issued a [Pa.R.A.P.] 1925(b) [o]rder to Appellant's trial counsel. Instead of filing a [Rule] 1925(b) statement, trial counsel asked to withdraw on the basis that he was appointed as trial counsel and did not feel that he could best represent Appellant at the appellate level, which the [trial court] granted.
>
> [The trial court] issued an order on March 14, 2014, directing the Delaware County Office of the Public Defender to determine if Appellant would qualify for representation. The Office of the Public Defender entered its appearance on March 31, 2014. Due to the change of counsel, [the trial court] issued another [Rule] 1925(b) statement and ordered it to be returned on April 21, 2014. [The trial court] wrote to [this Court] and respectfully asked for a sixty[-]day continuance from the date the [Rule] 1925(b) statement was received. Appellant filed his [Rule] 1925(b) statement on April 21, 2014. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 23, 2014].

Trial Court Opinion, 6/23/2014, at 3-4.

probable cause or reasonable suspicion in violation of the United States and Pennsylvania constitutions. Next, Appellant maintains that his sentence of two years of probation for simple possession should be vacated because the offense of simple possession merges with PWID. *See* Appellant's Brief at 5.

In his first issue presented, Appellant argues that the trial court erred by failing to grant suppression. He essentially asserts that the interaction amounted to a custodial arrest because the police approached the vehicle with guns drawn and did so without probable cause or reasonable suspicion. More specifically, he claims "that [t]here was no suspicion of a motor vehicle violation" and police effectuated "a seizure without reasonable suspicion because [Officer] Freeman's sole reason for the [vehicular] stop was the failure of the driver to attempt flight[.]" *Id.* at 11. Appellant argues that the police seized him before he failed to respond to the police commands to raise his hands and he allegedly engaged in furtive motions. *Id.* at 18. Appellant further contends there was no evidence to connect him to the gunshots heard by police except that he may have been on the same street. *Id.* at 19.

Our standard of review in addressing a challenge to the denial of a suppression motion is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the

defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

It is well-established that there are three categories of interaction between citizens and police officers. As our Supreme Court has clearly articulated:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ranson*, 103 A.3d 73, 76-77 (Pa. Super. 2014) (internal citations omitted).

In viewing the totality of the circumstances, we are mindful of the following legal principles. "If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." *Commonwealth v. Mack*, 953 A.2d 587,

590 (Pa. Super. 2008) (citation omitted). "In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous." *Id.* (citation omitted). When assessing the validity of a frisk for officer safety, "we examine the totality of the circumstances, giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch." *Id.* "[W]hether the defendant was located in a high crime area [may] support[] the existence of reasonable suspicion." *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009). "Evasive behavior also is relevant in the reasonable-suspicion mix." *Id.* "[I]f a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred." *Id.*; *see also Commonwealth v. Tuggles*, 58 A.3d 840, 844 (Pa. Super. 2012) ("Where a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular or multiple, can support a belief that the person has a gun."). "An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that

of others was in danger." **Mack**, 953 A.2d at 591 (citation, quotations and brackets omitted).

Under the facts of this case, the trial court determined that Appellant was the subject of an investigative detention at the time that the police commanded Appellant to stop reaching toward the center of the automobile and to put his hands up. Trial Court Opinion, 6/23/2014, at 4-5. Because a reasonable person in Appellant's position would not feel free to depart, we agree with the trial court's legal conclusion. Thus, the issue is whether the officers possessed reasonable suspicion that Appellant was either armed and dangerous or engaged in criminal conduct when they issued their command. **Ransom**, 103 A.3d at 77. The trial court found, in assessing the totality of the circumstances, that police had reasonable suspicion to suspect that Appellant could be armed or that criminal activity was afoot based upon the following considerations: (1) the high crime area was known for violent activity; (2) officers heard shots fired and responded to the area where the shots originated within seconds; (3) Officer Freeman opined that Appellant was attempting to flee when he hastily pulled out of a parking space, but pulled back in due to police presence; (4) Appellant was reaching towards the center of the automobile despite repeated requests by police to stop, and; (5) because police were responding to shots fired, the police had a reasonable basis to remove the occupants and check the vehicle to ensure their own safety. Trial Court Opinion, 6/23/2014, at 5. Upon review, again, we agree.

Officer Freeman testified that he was in uniform and on-duty in a high crime area at 8:45 p.m. on the evening in question. N.T., 10/2/2013, at 7-8. He was "one block away" when he heard "three shots fired." *Id.* at 8-9. Officer Freeman "radioed to dispatch what [he] had heard and the direction it was coming from" and he and "two other officers in individual cars responded to that area[]" within "a matter of seconds." *Id.* at 10. "In responding to the area, [Officer Freeman] looked for [] distinctive things [like] people running or occupied vehicles trying to get out of the area[, …b]ecause normally when you have that particular situation like that, people are definitely leaving, meaning the shooters are trying to quickly get out of the area after they committed the crime." *Id.* "As [Officer Freeman] was coming up to the [area, a blue] Mercury attempted to pull out, but quickly pulled back and parked." *Id.* at 11. Officer Freeman testified that "what aroused [his] suspicion was they were about to pull out, but once they saw the police cars coming they immediately pulled back over and parked." *Id.* at 29.

Officer Freeman "exited the [police] car and [] approach[ed the other vehicle] from the front" and Appellant looked at Officer Freeman. *Id.* at 11-12. As Officer Freeman approached the vehicle, he asked the vehicle occupants, including Appellant, to show their hands because "[t]hey were reaching towards each other, more so towards the center of the seat." *Id.* at 13. Initially, they did not comply. *Id.* Officer Freeman testified that he "believe[d] they heard [him] and they didn't comply until [he] showed them,

- 8 -

until [he] pointed [a] gun at them." *Id.* at 21. When Officer Freeman ordered the occupants out of the car at gunpoint, they obeyed. *Id.* at 13-14. Officer Freeman testified he was concerned for his safety and the other officers' safety "because [the officers] did not know what [the passengers] were concealing or retrieving[.]" *Id.* at 14. Once the passengers alighted from the vehicle, the police recovered individual bags of marijuana packaged together and loosely wrapped in "tin foil [that] wasn't fully covering the contents of the bags." *Id.* at 15. At that point, police arrested Appellant and the passenger. *Id.* at 22, 27. There were no other pedestrians or vehicles in the area. *Id.* at 32. Officer Gizzi testified similarly. *Id.* at 34-42. Officer Gizzi saw the package of narcotics on the front passenger seat. *Id.* at 38, 41.

Viewed in totality, in the light most favorable to the Commonwealth as our standard requires, we discern no abuse of discretion or error of law in the denial of Appellant's suppression motion. This interaction amounted to an investigatory detention or weapons frisk that required reasonable suspicion. Here, police heard gunshots during the early evening hours[3] and

---

[3] The incident occurred at 8:45 p.m. N.T., 10/2/2013, at 8. Officer Freeman testified that Appellant had activated the headlights on his vehicle. *Id.* at 18. Although Appellant suggests that the headlights would have impeded on the officer's ability to observe activity within the vehicle, the trial court credited the officer's testimony and we have no basis to disturb this finding.

responded immediately to a high crime area from where the shots emanated. It took them a matter of seconds to arrive and there were no other people in the vicinity. Police immediately witnessed Appellant trying to drive away. However, upon seeing the marked police car and uniformed police, Appellant parked his car and then began engaging in furtive movements towards the center of the vehicle.[4] He did not respond to police commands. The police, responding to gunshots and fearing for their security, conducted a permissible weapons frisk for their safety. Once the occupants of the car exited the vehicle, the police saw the contraband in plain view. It was only then that police arrested Appellant.

Appellant makes much about the fact that police drew their guns and issued commands. However, when the totality of the circumstances are carefully examined, we conclude that the police acted with reasonable suspicion. Officer Freeman testified without contradiction that he encountered Appellant's vehicle in a high crime area when responding to

---

[4] At trial, Appellant cross-examined Officer Freeman about alleged inconsistencies in his testimony regarding the movements. N.T., 10/2/2013, at 18-20. In the affidavit of probable cause, Officer Freeman said that Appellant was reaching "toward the middle console." *Id.* at 19. Defense counsel suggested that there is no middle console in 1994 Mercury automobiles. *Id.* at 19-20. Officer Freeman testified that those cars "have armrests in the middle of the seats." *Id.* at 20. "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." ***Commonwealth v. Burkett***, 830 A.2d 1034, 1038 (Pa. Super. 2003).

shots fired. He was looking for an individual(s) who appeared to be fleeing the scene. Appellant's operation of his vehicle fit this description. It struck Officer Freeman as suspicious that that Appellant quickly re-parked after seeing his marked police car arrive on the scene. Officer Freeman, therefore, approached Appellant's vehicle and issued commands. Those actions were reasonable in preserving officer safety. It was only **after** Appellant refused to comply and continued to make furtive movements that Officer Freeman pulled his weapon. By this time, Officer Freeman had reason to believe that criminal activity was afoot and that Appellant could be armed and dangerous. Thus, Appellant's detention was constitutionally justified. For each of the foregoing reasons, we conclude that this interaction amounted to an investigatory detention and/or weapons stop and that, under the totality of circumstance the officers possessed the requisite reasonable suspicion to support Appellant's detention. Accordingly, Appellant's first issue lacks merit.

In his second issue presented, Appellant contends that his sentence is illegal because the trial court should have merged his sentence for possession of a controlled substance with his sentence for his PWID conviction. Appellant's Brief at 21. The Commonwealth concedes this error. **See** Commonwealth's Brief at 23-24. We agree that merger was applicable.

Challenges to an illegal sentence cannot be waived. **See Commonwealth v. Melvin**, 103 A.3d 1, 52 (Pa. Super. 2014). "No crimes shall merge for sentencing purposes unless the crimes arise from a single

criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. Here, there is no dispute that all of the crimes arose from one criminal act. Moreover, this Court previously determined that simple possession of a controlled substance merges with PWID for sentencing purposes. ***See Commonwealth v. James***, 46 A.3d 776, 781 (Pa. Super. 2012) (citation omitted). Accordingly, Appellant is entitled to relief. As such, we vacate Appellant's sentences and remand for resentencing.

Convictions affirmed. Sentences vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/5/2015