J-S31010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :         PENNSYLVANIA
                              :
            v.                     :
                              :
                              :
MARLENE COTTO-COTTO         : 
                              :
        Appellant        :    No. 1900 MDA 2019

Appeal from the Judgment of Sentence Entered October 23, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001371-2019

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:         **FILED OCTOBER 16, 2020**

Marlene Cotto-Cotto appeals from her judgment of sentence entered after a jury convicted her of resisting arrest.  We affirm.

Appellant's convictions relate to an altercation with officers of the Reading Police Department that took place on the evening of March 5, 2019. On that night, Officers Timothy Morris and Trevor Atkins were in uniform, in a marked police vehicle, and on routine patrol when they observed a vehicle with a broken headlight turn into the parking lot of a Family Dollar without using its turn signal.  The officers initiated a traffic stop and observed two young women in the front seat and a child in the back seat.  Appellant was seated in the passenger-side front seat.  As the officers approached the vehicle, they detected a strong odor of "burnt marijuana" and observed cigar wrappers in plain view.  N.T. Trial, 10/3/19, at 60-61, 68-69.  Additionally,

Officer Atkins observed Appellant making "furtive movements." Specifically, he observed "her head and shoulders going in a downward position," as if she were bending over to hide something in the front seat. *Id*. at 69, 71. Based upon these observations, Officer Morris informed the occupants of the vehicle that the officers intended to search the vehicle, and would also be patting them down for weapons.

The driver stepped out voluntarily, and was frisked by Officer Morris without incident. However, Officer Atkins was forced to open the passenger door and direct Appellant to step out. She refused to cooperate unless a female officer was brought to the scene, alleging that it was illegal for a male officer to search a woman. Appellant persisted in refusing to comply, and Officer Atkins attempted to place her in handcuffs to effectuate the pat down. At this point, Appellant began to physically resist Officer Atkins, and both officers moved to subdue her. During the ensuing altercation, Appellant dug her nails into Officer Morris's palm, kicked him in his shin, and stomped on his foot. Eventually, Appellant was handcuffed and secured in the officers' patrol car. In connection with these events, Appellant was charged with aggravated assault, simple assault, and resisting arrest.

Before trial, the Commonwealth withdrew and dismissed all of the charges except resisting arrest. Ultimately, a jury convicted Appellant based upon the testimony of both officers. Appellant was sentenced to pay costs and write a one-page research paper about the law in the Commonwealth of

Pennsylvania on citizen-police interactions. Appellant filed a timely post-sentence motion, which was denied. Appellant filed a timely notice of appeal, and she timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. The trial court has authored a Rule 1925(a) opinion.

Appellant raises the following issues for our review:

1. Was the evidence insufficient to prove beyond a reasonable doubt that [Appellant] committed resisting arrest or other law enforcement as the Commonwealth failed to prove beyond a reasonable doubt that the officers' law-enforcement related conduct during the traffic stop and subsequent interaction with the Appellant was lawful?

2. Was the verdict against the weight of the evidence?

Appellant's brief at 4.

In her first issue, Appellant asserts that the evidence adduced by the Commonwealth at her trial was insufficient to support her conviction because her underlying "arrest" was unlawful.[1] *See Commonwealth v. Jackson*, 924 A.2d 618, 620 (Pa. 2007) ("A lawful arrest is an element of the crime of resisting arrest . . . . Thus, to be convicted of resisting arrest, the underlying arrest must be lawful."). Specifically, Appellant asserts the officers were not

---

[1] In addition to a full arrest, this requirement also extends to less-intrusive types of police investigatory actions that result in charges where a defendant resists a lawful investigation or detention. *See*, *e.g.*, *Commonwealth v. Stevenson*, 894 A.2d 759, 775 (Pa.Super. 2006), *abrogated on separate grounds*, *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019); *see also Commonwealth v. Maxon*, 798 A.2d 761, 770 (Pa.Super. 2002).

justified in concluding that a pat-down to check her for weapons was necessary. **See** Appellant's brief at 13 ("The officers did not have a reasonable suspicion that [Appellant] was armed and dangerous. Therefore, they did not have the legal authority to frisk her for weapons and subsequently arrest her for failing to comply with the same.").

Appellant's first issue is properly framed as a challenge to the sufficiency of the evidence, even though the lawfulness of Appellant's interactions with the officers is the only element of the crime under consideration. **See Jackson**, **supra** at 620. "In reviewing a sufficiency challenge, a court determines whether the evidence, viewed in the light most favorable to the verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Id**. Here, we are called upon to determine whether or not the officers possessed the necessary suspicion to conduct a pat-down of Appellant, and thereafter arrest her for non-compliance. **See Commonwealth v. Maxon**, 798 A.2d 761, 770 (Pa.Super. 2002) ("A determination that the underlying arrest was lawful necessitates a legal conclusion that the arresting officer acted with authority[.]"). Accordingly, our scope of review is plenary and our standard of review is *de novo*. **See Jackson**, **supra** at 620.

In Pennsylvania, an individual commits the crime of "resisting arrest" when, "with the intent of preventing a public servant from effecting **a lawful arrest** or discharging any other duty, the person creates a substantial risk of

bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104 (emphasis added). The following legal principles will guide our review of whether there is sufficient evidence to conclude Officer Atkins possessed sufficient suspicion to frisk Appellant for weapons:

> [T]he officer may conduct a pat-down of a suspect's outer garments if the officer observes conduct that leads him to reasonably believe the suspect may be armed and dangerous. **Commonwealth v. Mack**, 953 A.2d 587, 590 (Pa.Super. 2008) (noting officer's observation of suspect's reaching movements while suspect was in vehicle can lead officer to reasonably conclude his safety is in jeopardy). In considering whether evidence supports a [**Terry v. Ohio**, 392 U.S. 1 (1968)] frisk, we are "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." **Mack**, 953 A.2d at 590. "In order to establish reasonable suspicion, the police officer must articulate specific facts which he could reasonably infer that the individual was armed and dangerous." **Id**. When assessing the validity of a **Terry** frisk, we examine the totality of the circumstances.

**Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019). Thus, "a protective search cannot be justified under **Terry** unless the officer can articulate facts that establish an individualized, objective basis for perceiving a threat of armed violence." **Commonwealth v. Grahame**, 7 A.3d 810, 816 (Pa. 2010). Finally, "[t]he **Terry** totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters." **Commonwealth v. Simmons**, 17 A.3d 399, 403 (Pa.Super. 2011).

As noted above, Appellant argues that the officers lacked reasonable suspicion to conduct a **Terry** frisk because they could not articulate any specific facts that would allow them to reasonably infer that she was armed and dangerous. **See** Appellant's brief at 11-13. The Commonwealth responds that the officers' testimony at trial was sufficient to demonstrate the reasonableness of their suspicion. **See** Commonwealth's brief at 9.

In its Rule 1925(a) opinion, the trial court concluded that there was sufficient evidence to support the jury's finding of guilt, specifically stating that the evidence demonstrated Appellant's "intent of preventing the police officer[s from] discharging a duty, in this case, the performance of a pat down." Trial Court Opinion, 2/6/20, at 4-5. We agree.

Appellant's argument is quite straightforward: "While Officer Morris did observe indicia of a tiny amount of marijuana, and Officer [Atkins] did observe [Appellant] bend over in her seat while he was approaching, these do not give rise to reasonable suspicion that [Appellant] was armed and dangerous[.]" **See** Appellant's brief at 12-13. In particular, Appellant focuses upon the officers' testimony that they smelled a strong odor of burnt marijuana emanating from the vehicle, emphasizing that our Supreme Court has disclaimed the old aphorism that "guns follows drugs." **See Grahame**, **supra** at 811 ("[T]he Superior Court erred in adopting a 'guns follow drugs' presumption in order to justify a protective search for weapons pursuant to

[**Terry**].").  However, no such *per se* presumption is necessary to justify the **Terry** frisk conducted by Officer Atkins in this case.[2]

Viewing the officer's testimony collectively, the following view of their interaction with Appellant is presented.  The officers were patrolling in a marked vehicle, while wearing full uniforms on the evening of March 5, 2019, after dark.  They observed the subject vehicle with a broken headlight make a turn without using a signal, and initiated a traffic stop.  Based upon their training and experience in drug interdiction, officers testified that an odor of burnt marijuana was emanating from the vehicle.  The officers also observed cigar wrappers in plain view, which they testified was also indicative of

_____

[2] While conceding that Appellant's above-described "furtive movements" were observed by Officer Atkins prior to the pat-down in this case, she argues that we should disregard this testimony altogether.  Specifically, she notes that Officer Morris gave the initial order for the passengers to exit the vehicle to be patted down for weapons, but never testified that he observed Appellant's movements in the front seat.  **See** Appellant's brief at 13; **see also** N.T. Trial, 10/3/19, at 60-61.  However, the testimony at trial also reveals that Appellant did not comply with this directive from Officer Morris.  N.T. Trial, 10/3/19, at 61-62, 71-72.  Rather, Officer Atkins was the one who opened the passenger door and commanded Appellant to step out.  Moreover, Officer Atkins was the one who ultimately frisked, or attempted to frisk, Appellant.  **Id**.  In relevant part, Officer Atkins testified that he detected a strong odor of burnt marijuana **and** observed Appellant's furtive movements in the front seat.  **Id**. at 69-71.  As discussed above, these observations were sufficient to justify Officer Atkins' frisk of Appellant independent of any initial order from Officer Morris.  **See**, **e.g.**, **Commonwealth v. Buchert**, 68 A.3d 911, (Pa.Super. 2013) (furtive movements during a night time traffic stop justified a protective frisk).

marijuana use.[3]   Additionally, Officer Atkins testified that he saw Appellant making furtive movements when he approached, with her head and shoulders in a downward position, which suggested to him that she was concealing something.  *See* N.T. Trial, 10/3/19, at 59-73.

Viewing this evidence in the light most-favorable to the Commonwealth, we believe there was sufficient evidence to justify the officers' belief that Appellant might have had a weapon on her person.  This Court has regularly concluded that furtive movements, coupled with other indicia of criminal behavior or potential risk to law enforcement, are sufficient to justify a *Terry* frisk during a traffic stop.  *See Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (Pa.Super. 2013) (holding that furtive movements along with "extreme nervousness and the night time stop" warranted a *Terry* frisk); *Commonwealth v. Simmons*, 17 A.3d 399, 405 (Pa.Super. 2011) (holding that "suspicious movements" observed during a "single police encounter" were sufficient to warrant a *Terry* frisk of a vehicle passenger).  Here, the strong odor of marijuana emanating from the vehicle, viewed in combination with Appellant's furtive movements in the front seat, were sufficient to support Officer Atkins' frisk of Appellant.  *Id*.  No relief is due on Appellant's first issue.

_____

[3]   No verifiable marijuana was discovered on Appellant's person, or in the vehicle.  *See* N.T. Trial, 10/3/19, at 59 ("There were brown cigar wrappers containing what I believed to be marijuana.  When I attempted to test them, there wasn't enough left inside of the cigar wrappers to positively identify what was in [the cigar wrappers].").

In Appellant's second issue, she contends that her conviction for resisting arrest was against the weight of the evidence. *See* Appellant's brief at 5. A claim that the verdict was against the weight of the evidence is left to the sound discretion of the trial court. *See Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). Review of a weight of the evidence claim is a review of the trial court's exercise of discretion, and is not addressed to the underlying question of whether the verdict was itself against the weight of the evidence. *Id*. This distinction is crucial, as the trial judge has the opportunity to see and hear the witnesses, and view the evidence presented at trial. *Id*. Therefore, we will not reverse the finding of the trial court unless an abuse of discretion occurs, such as where "the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will." *Id*.

Indeed, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Id*. To justify a new trial on this basis, "the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa.Super. 2019) (*en banc*).

Appellant argues that the lower court abused its discretion in denying her a new trial because she resisted an arrest that the police "did not have the ability to make," and that she was not charged with any other crime aside

from resisting that arrest. Appellant's brief at 10. She further states that it shocks the conscience that she now has a criminal conviction because she refused to cooperate with the police. *Id*. at 14.

In its Rule 1925(a) opinion, the trial court indicates that the jury's verdict did not shock its conscience. Specifically, the trial court stated that "the jury was free to accept or reject the various theories argued by the Commonwealth and the Defense" and that "[v]igorous cross examination occurred regarding the need for a pat-down search of the defendant at all." Trial Court Opinion, 2/5/2020 at 5-6. The court further stated that the verdict "does not come as a shock to this Court" and that in its opinion, the evidence at trial was not contrary to the jury's verdict. *Id*. at 6. The trial court observed the evidence presented at trial and concluded that the jury's verdict was not against the weight of the evidence. *Id*.

We are bound to defer to the trial court's determination, as the trial court was in the best position to evaluate the facts and evidence that were presented. Nothing in the record or the law indicates that the trial court's exercise of discretion in this manner was an abuse of discretion. Hence, no relief is due on Appellant's second claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/16/2020