**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WENDY P. GALLO | : | |
| | : | |
| Appellant | : | No. 331 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 14, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002503-2022

BEFORE:  DUBOW, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                **FILED: SEPTEMBER 24, 2024**

Appellant, Wendy P. Gallo, appeals from the March 14, 2023 judgment of sentence of 18 months of probation with 90 days of electronic home monitoring entered in the Allegheny County Court of Common Pleas following her conviction of one count of DUI—Controlled Substance.[1]  Appellant's counsel, Lisle T. Weaver, Esquire, has filed a Petition to Withdraw as Counsel and an **_Anders_**[2] Brief to which Appellant has not filed a response.  Upon review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The relevant facts and procedural history are as follows.  On January 22, 2022, White Oak Borough Police Officer Martell Fontaine was on patrol

---

[1] 75 Pa.C.S. § 3802(d)(2).

[2] **_Anders v. California_**, 386 U.S. 738 (1967).

when he observed Appellant make a left-hand turn without using a turn signal. As a result, Officer Fontaine initiated a traffic stop and ran the vehicle's license plate, which indicated that an active warrant was attached to the license plate of the vehicle. Appellant stopped her vehicle in the parking lot of a gas station and Officer Fontaine pulled up beside her. Officer Fontaine then approached the driver's side of Appellant's vehicle, observed that there were three passengers in it, and signaled for Appellant to roll down the window. Appellant complied and Officer Fontaine advised Appellant why he had stopped her. While Officer Fontaine was speaking with Appellant, he observed that she was "making faces" at him and was not "in control of her body movements." N.T. Suppression, 10/2/22, at 9. This indicated to Officer Fontaine that Appellant was under the influence of a controlled substance.

Officer Fontaine then asked Appellant for her driver's license and registration. His review of those documents revealed that the information on the warrant on the license plate did not match Appellant's information.[3] About 60 to 90 seconds later, Officer Fontaine's partner, Sergeant Jessica Hetherington, arrived at the scene. Officer Fontaine then went to the passenger side of the vehicle to identify and speak with the passengers, while Sergeant Hetherington remained on the driver's side where she observed Appellant reaching under the seat and moving her hands around. Sergeant

_____

[3] Officer Fontaine explained that the "warrant hit" "didn't necessarily hit off the vehicle, but it may have hit off the registered owner of the vehicle." N.T. Suppression at 16-17.

- 2 -

Hetherington gave Appellant multiple verbal commands to stop reaching under her seat and to show her hands, but Appellant did not comply. From his position on the passenger side of the vehicle, while continuing to identify the passengers in the vehicle, Officer Fontaine noticed that Appellant was acting "[v]ery hostile; very argumentative[;] very - - her mood changes were very up and down, pleasant one minute, upset the next." *Id.* at 13. Sergeant Hetherington, who observed Appellant appearing "lethargic . . . like she was altered[,]" removed Appellant from the vehicle and patted her down for weapons. Upon removing Appellant from the vehicle, Sergeant Hetherington observed a "stamp bag" and an orange pill[4] on the driver's seat where Appellant had just been seated. *Id.* at 41-42. Appellant continued to act erratically—screaming, yelling, pushing, and elbowing Sergeant Hetherington. Appellant stated that she had a "breathing issue" and Sergeant Hetherington observed Appellant "nodding off" and Appellant's "eyes fluttering." *Id.* at 42. Sergeant Hetherington concluded that Appellant "was definitely under the influence of a controlled substance at that point." *Id.*

Sergeant Hetherington then handcuffed Appellant, placed her into a patrol vehicle, and transported her to the White Oak Police Station. At the station, officers searched Appellant, finding drug paraphernalia including a "glass meth pipe with residue and burn on it[,]" and conducted field sobriety tests, which Appellant failed. *Id.* at 43. *See also* N.T. Trial, 1/17/23, at 7.

_____

[4] A "stamp bag" is a bag of heroin. The orange pill was Gabapentin.

Officers who remained on the scene searched Appellant's vehicle and seized a "kit," sitting on the floor, partially under the driver's seat where Appellant had been sitting.[5]

Following these events, the Commonwealth charged Appellant with two counts of DUI and one count of Possession of Drug Paraphernalia.[6]

On August 1, 2022, Appellant filed a motion to suppress evidence asserting that Sergeant Hetherington impermissibly extended the traffic stop when she removed Appellant from Appellant's vehicle, which necessitated suppression of the warrantless seizure of the drug paraphernalia and container from the vehicle.

On October 6, 2022, the trial court held a hearing on Appellant's suppression motion at which Officer Fontaine and Sergeant Heatherington testified to the above facts. Officer Fontaine also testified that, prior to Sergeant Hetherington's arrival, he did not see any drugs, guns, or other contraband, or Appellant making furtive movements or reaching around the vehicle. N.T. Suppression at 26. Officer Fontaine clarified that the purpose of the traffic stop was Appellant's turn signal violation and the warrant hit. *Id.* at 27.

---

[5] Sergeant Hetherington explained that a "kit" is "common for people that use heroin, methamphetamine. And they have their needles, their tie offs, the cotton swabs, purely drug use paraphernalia." N.T. Suppression at 44.

[6] 75 Pa.C.S. §§ 3802(d)(1) and (d)(2), and 35 P.S. § 780-113(a)(32). The Commonwealth also charged Appellant with numerous summary traffic offenses.

At the conclusion of testimony, Appellant also asserted that the court should suppress the seized evidence because the original arrest was made without probable cause.

On January 17, 2023, the trial court denied Appellant's suppression motion, concluding that the officers did not impermissibly extend the traffic stop. The trial court found that, at the time that Sergeant Hetherington instructed Appellant to exit the vehicle, the traffic stop had not yet been concluded because Officer Fontaine had only begun the traffic stop 60 to 90 seconds earlier and he was still in the process of identifying the passengers in the vehicle. In addition, the court concluded that because Sergeant Hetherington observed Appellant reach under her seat and then fail comply with Sergeant Hetherington's instructions to cease doing so, Sergeant Hetherington's order that Appellant exit the vehicle was lawful in order to effectuate officer safety.

That same day, Appellant proceeded to a stipulated bench trial, after which the court convicted Appellant of DUI—Controlled Substance.[7] On March 14, 2023, the court sentenced Appellant to 18 months of probation with 90 days of electronic home monitoring. This timely appeal followed.

On March 17, 2023, Appellant's counsel filed a motion for leave to withdraw, which the trial court granted. On May 22, 2023, the court appointed current counsel, Attorney Weaver, to represent Appellant.

---

[7] The court found Appellant not guilty of all the other charged offenses.

On August 7, 2023, Attorney Weaver filed a Pa.R.A.P. 1925(c)(4) statement indicating her belief that Appellant's appeal is wholly frivolous.

On June 26, 2024, Attorney Weaver filed an **Anders** Brief.  Appellant did not file a response.  In the **Anders** Brief, Attorney Weaver indicated that Appellant wished to raise the following issue on appeal:

> Whether the trial court abused its discretion and/or erred as a matter of law by denying Appellant's Motion for Suppression of Evidence when the officers violated her due process rights under the Fourth Amendment of the United States Constitution and Article I, Section VIII of the Pennsylvania Constitution when the stop extended beyond a mere interaction and into a detention?

**Anders** Brief at 5.

## A.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel.  "When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."  **Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010).  In order for counsel to withdraw from an appeal pursuant to **Anders**, our Supreme Court has determined that counsel must meet the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

- 6 -

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Counsel has complied with the mandated procedure for withdrawing as counsel. Additionally, counsel confirms that she sent Appellant a copy of the ***Anders*** brief and petition to withdraw, as well as a letter explaining to Appellant that he has the right to retain new counsel, proceed *pro se*, and to raise any additional points. ***See Commonwealth v. Millisock***, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements). Because counsel has satisfied the above requirements, we will address the substantive issue raised in the ***Anders*** brief. Subsequently, we must "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5 (citation omitted). ***See also Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting ***Anders*** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

## B.

In the ***Anders*** Brief, counsel indicates that Appellant seeks to challenge the denial of her suppression motion. ***Anders*** Brief at 12-15. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct."

*Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–48 (Pa. 2012). Our scope of review of the suppression court's factual findings is limited to the record from the suppression hearing. *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017).

A motor vehicle stop constitutes a seizure for Fourth Amendment purposes and "activates constitutional protections against unreasonable searches." *Commonwealth v. Malloy*, 257 A.3d 142, 147 (Pa. Super. 2021). In addition, the law is clear that an "officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Calabrese*, 184 A.3d 164, 167 (Pa. Super. 2018) (citation omitted). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [] and to attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted).

To ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot. *Malloy*, 257 A.3d at 150. *See also Commonwealth v. Ross*, 297 A.3d 787, 793 (Pa. Super. 2023) (for officer safety during a lawful traffic stop, the officer is permitted to order the driver to exit the vehicle until the stop is completed, even if there is no reasonable suspicion of criminal activity). During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019) (citation omitted). "Further, 'if there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'" *Id.* (quoting *Commonwealth v. Chase*, 960 A.2d 108, 115 n.5 (Pa. 2008)).

Critically, in balancing the rights of citizens to be free of unreasonable searches and seizures against protecting citizen and officer safety, the courts must be "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008).

**C.**

Following our review, we conclude that the record supports the trial court's findings of fact and its legal conclusions. The parties do not dispute that Appellant failed to use her turn signal when making a left turn, making the initial stop lawful. The evidence indicates that Officer Fontaine's license plate search of Appellant's vehicle revealed an active warrant matching the license plate number. Officer Fontaine approached Appellant's vehicle and explained to her why he had pulled her over and observed the indicia of intoxication. Sixty to 90 seconds later, while Officer Fontaine was still identifying the passengers in the vehicle, Sergeant Hetherington arrived and saw Appellant reaching under her seat. Despite repeated orders to stop reaching under the seat and to show her hands, Appellant refused to comply, resulting in her removal from the vehicle. Once Appellant exited the vehicle, the officers saw a stamp bag and orange pill in plain view on the driver's seat.

The foregoing evidence indicates that not only did the officers not unlawfully prolong the traffic stop, but also that the stop had barely begun when Sergeant Hetherington arrived. For her own safety, she lawfully removed Appellant from the vehicle, resulting in the discovery, in plain sight, of contraband. Accordingly, we discern no error in the trial court's denial of Appellant's motion to suppress evidence.

**D.**

Following our review of the issue raised in counsel's ***Anders*** Brief, we agree with counsel and conclude that this appeal is wholly frivolous.

Accordingly, we grant counsel's Petition to Withdraw and affirm Appellant's Judgment of Sentence.

Petition to Withdraw as Counsel granted; Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/24/2024