J-A23021-22

2022 PA Super 213

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DWAYNE CUNNINGHAM | : | No. 86 MDA 2022 |

Appeal from the Order Entered December 8, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000856-2021

BEFORE: BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED DECEMBER 13, 2022**

The Commonwealth appeals from the December 8, 2021, order entered in the Court of Common Pleas of Schuylkill County, which granted the pre-trial omnibus suppression motion filed by Appellee Dwayne Cunningham ("Cunningham").[1] After a careful review, we reverse the order granting the suppression motion, and we remand for further proceedings consistent with this decision.

The relevant facts and procedural history are as follows: On April 6, 2021, a criminal complaint was filed against Cunningham charging him with

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In its notice of appeal, the Commonwealth certified it took this interlocutory appeal pursuant to Pa.R.A.P. 311(d), and the suppression court's ruling terminates or substantially handicaps its prosecution. ***See Commonwealth v. Holston***, 211 A.3d 1264, 1268 (Pa.Super. 2019) (*en banc*).

receiving stolen property, 18 Pa.C.S.A. § 3925(a), and firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1). On October 12, 2021, Cunningham filed a counseled omnibus pre-trial suppression motion. Therein, Cunningham averred the police did not have reasonable suspicion to conduct a **Terry**[2] stop and frisk. Relevantly, Cunningham specifically argued:

> 20. In order for [the police] to detain [Cunningham] and conduct a pat-down frisk of [Cunningham], pursuant to the United States Supreme Court's holding in **Terry**[], [the police] must have a reasonable suspicion that [Cunningham] was involved with and/or committing a punishable crime and that [Cunningham] was in possession of a weapon based on the totality of the circumstances, respectively.
>
> 21. Due to the passage of the Medical Marijuana Act of 2016 in Pennsylvania and the recent Superior Court decision in **Commonwealth v. Barr**, 220 Pa.Super. 236 (2019),[3] the odor of marijuana alone cannot be used as justification for a warrantless search of an individual detained during a motor vehicle stop.
>
> 22. As such, the odor of marijuana alone cannot be used as reasonable suspicion to detain an individual walking in public, in the open air, pursuant to **Terry**.
>
> 23. Moreover, [the police officer] did not have the requisite reasonable suspicion that [Cunningham] was carrying a weapon to satisfy a limited pat-down search pursuant to **Terry**.
>
> 24. Therefore, [the police officer's] **Terry** stop and subsequent frisk of [Cunningham] violated the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution.

_____

[2] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868 (1968).

[3] We note the citation to **Barr** provided in Cunningham's pre-trial motion is incorrect. The correct citation is **Commonwealth v. Barr**, 240 A.3d 1263 (Pa.Super. 2019). Moreover, the Supreme Court vacated this Court's decision in **Barr** on December 29, 2021. **Commonwealth v. Barr**, ____ Pa. ____, 266 A.3d 25 (2021).

25. Accordingly, any evidence found as a result of or subsequent to the frisk should be found inadmissible at trial[.]

Cunningham's Omnibus Pre-Trial Suppression Motion, filed 10/12/21, at 4-5 (footnote added).

On October 27, 2021, the suppression court held a suppression hearing at which Minersville Borough Police Officer Michael Bucek was the sole testifying witness. Specifically, Officer Bucek testified he was on duty with his partner during the evening of April 5, 2021, and at approximately 10:30 p.m., he was driving slowly with the police vehicle's windows down. N.T., 10/27/21, at 4. As he traveled down the 200 block of North Street, which is in a residential area with vehicles parked on both sides of the road, he detected an odor of burnt marijuana coming from the area. *Id.* at 4-5. Officer Bucek scanned the area and "observed three hooded males on the left side of the sidewalk" in the middle of the block. *Id.* at 5. Cunningham was one of the males in the group. *Id.* Officer Bucek testified that, as he drove closer to the three males, "the odor of burnt marijuana grew, grew stronger." *Id.*

Officer Bucek testified he drove past the three men in the direction they were walking, and he parked the police vehicle near the intersection at the end of the block on the left side, which is the same side of the street on which the men were walking. *Id.* He testified that, as he and his partner exited the police vehicle, he observed the three men, including Cunningham, cross to the opposite side of the street as though trying to avoid the officers. *Id.* As the men continued walking down the right side of the street, Officer Bucek and

- 3 -

his partner walked across the crosswalk at the intersection and met them at the bottom of the block. *Id.* at 6, 15.

Officer Bucek testified he said to the whole group, "Hey, man, give me a second," and, in response, "they all kind of started yelling at [him]." *Id.* at 6. He noted the three men were "aggressive" and shouted profanities, including "Fuck you, Officer," and "Get the fuck out of here." *Id.* at 6, 11. He testified he "told them to stop at that point," and he announced his suspicions that they were smoking marijuana. *Id.* at 6, 15. He specifically asked them, "Are you guys smoking?" *Id.* at 15.

Officer Bucek testified that after he asked the men to stop and articulated his suspicions about the burnt marijuana, "[the men] were acting aggressively….It kind of seemed like they were circling around me and my partner there." *Id.* at 8. Officer Bucek testified he attempted to get identifications from the men. *Id.* at 6. In response, the men said, "Don't touch me. Get away from me. You can't stop me. Why are you stopping me?" *Id.*

Officer Bucek noted that, because of the men's aggression and the fact they had encircled him and his partner, he was concerned for his safety and the safety of his partner, who had been on the force for less than a month at that point. *Id.* at 7-8. He testified he turned to his partner to ensure he had the radio, told him to "get [his] back," and instructed him to contact County if "something happens here[.]" *Id.* at 7.

Officer Bucek testified that, believing he and his partner were "in danger[,]" he decided to frisk the men for weapons. *Id.* at 8. He testified:

> The first [man] ultimately, after arguing over it eventually gave me his ID. And I patted him down and nothing---I didn't find any weapons on him. But the second guy was still being aggressive. And at that point, I did pat him down; but it seemed like he was ready to turn around and do something. I'm not sure, you know—he was still acting aggressive, the second [man]. And then he still refused to ID himself at that point.

*Id.*

Officer Bucek testified Cunningham was standing the "farthest away from [him] and the other officer," so he approached him last to pat him down. *Id.* Officer Bucek indicated that "right before" he turned to pat-down Cunningham, "he kept moving away from [the officer]." *Id.* at 7. Officer Bucek indicated he told Cunningham to put his hands on a pole, and Cunningham complied; however, when the officer attempted to pat him down, Cunningham tried to evade him by "scooting around the pole…away from [the officer]." *Id.* Officer Bucek told him, "Hey, stop moving." *Id.* He testified that "[e]ventually, he stopped moving[,] [a]nd then [he] ended up patting him down." *Id.*

Officer Bucek testified he immediately felt a handgun in Cunningham's sweatshirt front pocket. *Id.* at 9. He clarified that, based on his training and experience, he could immediately identify the item as a weapon when he patted it. *Id.* Officer Bucek testified he seized the weapon, which was a .380 Ruger. *Id.* at 10.

On cross-examination, Officer Bucek clarified he was approximately ten feet from the three men when he first smelled the odor of burnt marijuana. *Id.* at 12. He neither observed any of the men smoking any substance nor observed any "wafting smoke." *Id.* During the time he smelled the odor of marijuana while he was driving, there were no cars behind him, no cars in front of him, and no cars that passed him. *Id.* at 13. Officer Bucek noted the odor of burnt marijuana grew stronger as he drove slowly past the three men. *Id.* at 13-14. Officer Bucek clarified he did not ask for the men's identifications or seek to pat them down for weapons until they began to circle around the two officers. *Id.* at 16.

On redirect examination, Officer Bucek testified that, after he seized the handgun, he also found a lighter and a large amount of cash totaling $4,820.00 on Cunningham's person. *Id.* at 19. He indicated Cunningham indicated after the pat down that he had not been smoking marijuana; however, his "two friends were smoking it and they pitched it out while [the police] were passing [them]." *Id.*

At the conclusion of all testimony, by order entered on December 8, 2021, the suppression court granted Cunningham's pre-trial suppression motion and specifically directed that "all evidence obtained as a result of the *Terry* frisk of the defendant is suppressed." Suppression Court Order, filed 12/8/21 (unnecessary capitalization omitted).

In its opinion in support of the order, the suppression court held "[t]he interaction between Officer Bucek and [Cunningham] began as a mere encounter with [the officer] asking [the men] to give him a second; however, when he ordered them to stop, it became an investigative detention for which the officer must possess reasonable suspicion of criminal activity." Suppression Court Opinion, filed 12/8/21, at 4. The suppression court also concluded that, under "[t]he totality of the circumstances…Officer Bucek had reasonable suspicion of criminal activity to justify an investigative detention." *Id.* at 6.

However, as it pertained to the frisk of Cunningham for weapons, the suppression court concluded:

> Officer Bucek did not state any specific and articulable facts indicating Cunningham might be armed. Cunningham's hands were on the pole when he was frisked. There was no testimony that he had reached into his pockets or concealed them at any time during his interaction with the police. Bucek testified that he felt threatened by the men's aggression. He and his partner had weapons if they felt their use was necessary to control the situation, but they had no justification to frisk them.

*Id.* at 8.

The Commonwealth filed a notice of appeal on January 7, 2022, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, the Commonwealth sets forth the following issue in its "Statement of Question Presented" (verbatim):

> Did the trial court err in finding that an illegal *Terry* frisk occurred, and thereby suppressing all evidence as a result of said frisk?

- 7 -

Commonwealth's Brief at 4.

Initially, we note that when this Court reviews a Commonwealth appeal from an order granting a suppression motion, as we are tasked to do here, we may consider only the evidence produced at the suppression hearing, and then only that evidence which comes from the defendant's witnesses, along with the Commonwealth's evidence which remains uncontradicted. **Commonwealth v. Barr**, ___ Pa. ___, 266 A.3d 25 (2021). We must determine, in the first instance, whether the suppression court's factual findings are supported by the record, and if they are, we are bound to those findings. **See id.** We must always keep in mind that the suppression court, as the finder of fact, has the exclusive ability to pass on the credibility of witnesses. **See Commonwealth v. Fudge,** 213 A.3d 321, 326 (Pa.Super. 2019). Therefore, we will not disturb a suppression court's credibility determinations absent a clear and manifest error. **Id.** at 326-27.

We must also determine whether the legal conclusions the suppression court drew from its factual findings are correct. **See Barr**, **supra**, 266 A.3d at 39. Unlike the deference we give to the suppression court's factual findings, we have *de novo* review over the suppression court's legal conclusions. **See Commonwealth v. Brown**, 606 Pa. 198, 996 A.2d 473, 476 (2010).

Regarding the relevant substantive law, this Court has explained:

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." **Commonwealth v.**

*Strickler*, 563 Pa. 47, 757 A.2d 884, 888 (2000). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention.

*Commonwealth v. Mattis*, 252 A.3d 650, 654 (Pa.Super. 2021) (citations omitted).

In determining whether a police officer's interaction with a citizen was proper, we are guided by the following:

Our Supreme Court has explained the three types of interactions between law enforcement and private citizens as follows:

The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid[,] police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police

officer accosts an individual and restrains his freedom to walk away, he has seized that person.

*Commonwealth v. Adams*, 651 Pa. 440, 205 A.3d 1195, 1199-1200 (2019) (citations, brackets, and some quotation marks omitted).

Further, in considering whether a seizure occurred, or whether a reasonable person would feel free to leave, courts may examine the following:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Beasley*, 761 A.2d 621, 624-25 (Pa.Super. 2000) (citation omitted). Further, "[w]ith respect to the show of authority needed for a detention, the circumstances must present some level of coercion, beyond the officer's mere employment, that conveys a demand for compliance or threat of tangible consequences from refusal." *Commonwealth v. Luczki*, 212 A.3d 530, 544 (Pa.Super. 2019). *See Commonwealth v. Jones*, 266 A.3d 1090, 1094-95 (Pa.Super. 2021).

In the case *sub judice*, we agree with the suppression court that "[t]he interaction between Officer Bucek and [Cunningham] began as a mere encounter with [Officer] Bucek asking [the men] to give him a second[.]" Suppression Court Opinion, filed 12/8/21, 4. That is, taking into account the circumstances of the encounter, at this point the police would have communicated to a reasonable person that he was at liberty to ignore the

police presence and go about his business. **See Adams**, **supra**; **Beasley**, **supra**.

Moreover, we agree with the suppression court that, after Officer Bucek told the men, including Cunningham, "to stop" and announced his suspicions that they were smoking marijuana, an investigative detention occurred. **See Beasley**, **supra**. Accordingly, we must determine whether the police had reasonable suspicion supporting the investigative detention.[4]

"In determining whether police had reasonable suspicion to initiate an investigative detention, 'the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.'" **Commonwealth v. Jefferson**, 256 A.3d 1242, 1248 (Pa.Super. 2021) (*en banc*) (quotation omitted).

> [This Court has recognized] [r]easonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (citations omitted). To demonstrate reasonable suspicion, the detaining officer must "articulate something more than an inchoate and unparticularized suspicion

---

[4] We note the suppression court's holding that the officer had the necessary reasonable suspicion is based, in part, on this Court's decision in **Barr**, **supra**, which our Supreme Court subsequently vacated.

or hunch." **Jefferson**, 256 A.3d at 1248 (citation omitted). To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen. **See Commonwealth v. Riley**, 715 A.2d 1131 (Pa.Super. 1998).

Historically, Pennsylvania courts have held the smell of marijuana alone was sufficient to establish a reasonable suspicion of criminal activity. However, after the passage of the Medical Marijuana Act ("MMA")[5] and legalization of medical marijuana in the Commonwealth, our Supreme Court revisited this issue.

In **Commonwealth v. Hicks**, 652 Pa. 353, 208 A.3d 916 (2019), our Supreme Court held that "conduct in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" is, on its own, "an insufficient basis for reasonable suspicion that criminal activity is afoot." **Hicks**, **supra**, 208 A.3d at 945.

Further, in **Barr**, **supra**, our Supreme Court recognized that although "the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth[,]" the possession of marijuana is still illegal under the Controlled Substance, Drug, Device and Cosmetic Act[6] "for those not qualified under the MMA." **Barr**, **supra**, 266 A.3d at 41. Accordingly, the Supreme

---

[5] 35 P.S. § 10231.101 *et seq*.

[6] 35 P.S. §§ 780-101-144.

Court held in **Barr** that "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." **Id.** In so holding, the Supreme Court explained:

> We emphasize that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. [T]he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature.

**Id.** at 41-42.

This Court has had the opportunity to apply the **Hicks** and **Barr** decisions to various cases. In **Commonwealth v. Dabney**, 274 A.3d 1283, 129 (Pa.Super. 2022), we assumed, *arguendo*, that **Barr** applies to a determination of reasonable suspicion for an investigative detention, and we held that the officer could consider the odor of raw marijuana, as well as other factors, in making that determination. In **Commonwealth v. Lomax**, No. 470 MDA 2021 (Pa.Super. filed Feb. 14, 2022) (unpublished memorandum),[7] we held the smell of fresh marijuana cannot objectively suggest anything more than possession of a substance that many Pennsylvanians can legally possess.

---

[7] We note that Pa.R.A.P. 126(b), amended effective, May 1, 2019, provides that non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

Therefore, we concluded that it cannot, on its own, establish the reasonable suspicion necessary to initiate an investigative detention.

More recently, in **Commonwealth v. Felder**, No. 1082 MDA 2021 (Pa.Super. filed Aug. 9, 2022) (unpublished memorandum), we recognized the MMA does not permit the smoking of marijuana; therefore, the police's knowledge that the defendant had paraphernalia for smoking marijuana gave the officer reason to believe the marijuana was being used illegally. Also, in **Commonwealth v. Mercedes**, No. 1275 MDA 2021 (Pa.Super. filed Sept. 23, 2022) (unpublished memorandum), we again recognized the MMA does not permit the smoking of marijuana. **See** 35 P.S. § 10231.304(b) ("It is unlawful to: (1) Smoke medical marijuana").[8] Accordingly, we held the police had reasonable suspicion that marijuana was being illegally smoked when they smelled burnt marijuana and observed the defendant or his companion smoking a cigarillo. **See Mercedes**, **supra**.

In the case *sub judice*, viewing the totality of the circumstances, and applying our Supreme Court's holdings in **Barr**, **supra**, and its progeny, we conclude Officer Bucek had a reasonable suspicion that criminal activity was afoot when he subjected Cunningham to the investigative detention.

---

[8] The Supreme Court in **Barr** noted the MMA permits marijuana to be consumed by way of vaporization; however, it remains illegal to smoke this substance. **See Barr**, **supra**.

In addition to the smell of burnt marijuana, which Officer Bucek testified grew stronger as he approached the group of men, Officer Bucek testified the men crossed the street after he parked his police vehicle in an effort to evade him. *See Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*) (holding "[e]vasive behavior" is a relevant consideration in determining whether an officer has reasonable suspicion to conduct an investigatory detention). Further, Officer Bucek testified that, as soon as he approached the men and asked for them to give him a second, the three men became aggressive towards the officers, yelled at them, and shouted profanities.

Given the totality of the circumstances, the facts available to the officers gave them reason to believe that criminal activity was afoot. Thus, we agree with the suppression court that Officer Bucek and his partner had reasonable suspicion to support the investigative detention.

Next, we consider the Commonwealth's argument the suppression court erred in holding that, although Officer Bucek had reasonable suspicion that criminal activity was afoot to support the investigative detention, the officer "had no justification to frisk" Cunningham. In this vein, the Commonwealth notes the suppression court recognized "[Officer] Bucek testified that he felt threatened by the men's aggression." Suppression Court Opinion, filed 12/8/21, at 8. However, the Commonwealth notes the suppression court then erroneously held that, instead of frisking the three men, "[the officers] had

weapons if they felt their use was necessary to control the situation." *Id.* at 8.

This Court has explained:

It is well settled that an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a *Terry* frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. In determining whether a *Terry* frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

*Commonwealth v. Gray*, 896 A.2d 601, 605-06 (Pa.Super. 2006).

Under that standard then, police may conduct a limited pat-down of a person's outer clothing "in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Wilson*, 927 A.2d 279, 285 (Pa.Super. 2007) (quotation and quotation marks omitted). In making this determination of whether there was reasonable suspicion,

we must give due weight…to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006) (citations, quotation, and quotation marks omitted).

As this Court has recognized, "[a]n overt threat by the suspect or clear showing of a weapon is not required for a frisk." *Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa.Super. 2008). Indeed, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa.Super. 2010) (citation omitted).

The purpose of a *Terry* frisk is to allow an officer to continue an investigation without fearing for the safety of the officer or others nearby. *See Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa.Super. 2014). Moreover, in considering whether evidence supports a *Terry* frisk, we are "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for a weapon." *Mack*, 953 A.2d at 590.

With these principles in mind, we agree with the Commonwealth that the suppression court erred in concluding Officer Bucek did not have reasonable suspicion to conduct a pat-down search of Cunningham. Indeed, there were several circumstances that, while not dispositive on their own or individually applicable to Cunningham, combined to support reasonable suspicion for the pat-down search. *See Young*, *supra*.

Specifically, the undisputed evidence reveals that, after Officer Bucek

and his partner approached the three men, including Cunningham, the three

men almost immediately became aggressive, cursed at the officers, and

encircled the two officers. As the suppression court found:

> The three men moved in a manner that led Officer Bucek to
> believe [the three men] were trying to circle him. Their
> movements and aggressive tone led him to believe he was in
> danger. Officer Bucek's partner, who had the radio, had been on
> the force less than a month. Bucek told his partner to call for help
> if anything happened.

Suppression Court Opinion, filed 12/8/21, at 2. It was at this point that Officer

Bucek decided to pat down the three men for weapons.[9]

Furthermore, the undisputed evidence reveals that Officer Bucek patted

down Cunningham's companions before he patted down Cunningham. The

officer testified the second man he patted down continued to act aggressively

and "like he was ready to turn around and do something." N.T., 10/27/21, at

8. This same man refused to provide identification, and at this point, Officer

Bucek turned to pat down Cunningham.

---

[9] Specifically, Officer Bucek testified on direct examination as follows:
> Q: From the point where you requested Mr. Cunningham to stop
> based on the odor of burnt marijuana until the point where you
> began to ask him to allow you to frisk him, what was going on or
> what caused you to make that decision to perform a pat-down on
> him?
> A: They were acting aggressively and yelling. It kind of seemed
> like they were circling around me and my partner there.
> Q: What were you thinking at that point?
> A: That I'm in danger.
N.T., 10/27/21, at 7-8.

Officer Bucek indicated that "right before" he turned to pat-down Cunningham, "he kept moving away from [the officer]." *Id.* at 7. Officer Bucek indicated he told Cunningham to put his hands on a pole, and Cunningham complied; however, when the officer attempted to pat him down, Cunningham tried to evade him by "scooting around the pole...away from [the officer]." *Id.* Officer Bucek told him, "Hey, stop moving." *Id.* He testified that "[e]ventually, he stopped moving[,] [a]nd then [he] ended up patting him down. *Id.*

Based on the aforementioned, we hold the suppression court erred as a matter of law in granting the suppression motion. "The suppression court failed to consider the totality of the circumstances and give Officer [Bucek] the benefit of the inferences he drew from those circumstances." *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa.Super. 2014). The record shows the officer reasonably suspected that criminal activity was afoot and that Cunningham was armed and potentially dangerous. The totality of evidence establishes that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of other was in danger." *Cooper*, 994 A.2d at 592 (citation omitted).

Moreover, we specifically disagree with the suppression court's suggestion that "[Officer Bucek] and his partner had weapons if they felt their use was necessary to control the situation, but they had no justification to frisk them." Suppression Court Opinion, filed 12/8/21, at 8. The purpose of

the **Terry** frisk is to allow an officer to continue an investigation without fearing for the safety of officers or others nearby. **Commonwealth v. Scarborough**, **supra**. Common sense concerns give preference to the safety of officers in such circumstances, and certainly, officers should not have to rely on drawing and/or otherwise using their own weapons in lieu of frisking "a suspect where circumstances indicate that the suspect may have, or may be reaching for a weapon." **Mack**, 953 A.2d at 590.[10]

For all of the foregoing reasons, we reverse the suppression court's order and remand for further proceedings consistent with this decision.

Order reversed and case remanded. Jurisdiction relinquished.

Judge Bowes has joined the Opinion

Judge McCaffery files a Dissenting Opinion

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022

_____

[10] The learned Dissent indicates the officer stated he felt he was in danger when the men "'kind of seemed like they were circling' him" and goes on to state the officer did not see a weapon until after the search. Dissenting Opinion at 2. Respectfully, a law enforcement officer should not have to wait until his or her life is in imminent danger before taking action. Here, the totality of the circumstances supports the police officer's justification to frisk Cunningham.